THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v
ROBERT THOMPSON, Appellant.

Second Department, April 21, 1986

APPEARANCES OF COUNSEL

*Abraham Werfel* for appellant.

*John J. Santucci, District Attorney (Emil Bricker* of counsel), for respondent.

## OPINION OF THE COURT

MANGANO, J. P.

A defendant may be found guilty of the crimes of burglary in the second and third degrees when he, *inter alia,* "knowingly enters or remains unlawfully in a building" *(see,* Penal Law §§ 140.25, 140.20), or, in the case of burglary in the first degree, when he, *inter alia,* "knowingly enters or remains unlawfully in a dwelling" *(see,* Penal Law § 140.30). The phrase "enters or remains unlawfully" is defined in the Penal Law as follows (Penal Law § 140.00 [5]): "A person 'enters or remains unlawfully' in or upon premises when he is not licensed or privileged to do so".

The primary question to be resolved on the instant appeal is whether this defendant may be convicted of burglary in the second degree, when his entry into the complainant's apartment was accomplished through trick or misrepresentation.

█ In our view, the question must be answered in the affirmative.

### I

The female complainant, who was 77 years of age on the date of the incident, lived with her 85-year-old, blind husband in an apartment building in Rochdale Village, Queens. On June 15, 1980, the couple was robbed in the elevator of their apartment building, while riding up to their eighth-floor apartment. Subsequently, in an unrelated incident, the couple's apartment was burglarized. Both incidents were reported by the woman to the management of the building.

On August 15, 1980, at approximately 2:00 P.M., the woman responded to the ringing of her doorbell. The man who appeared at her door announced that he was "representing the Senior Citizens". He also stated that he was aware of the prior criminal acts to which the elderly couple had been subjected, and had been sent to their apartment to help. The woman invited the man in after he flashed a white and silver badge. The woman introduced the visitor, who identified himself as "Steve McBride", to her husband, and, on this occasion, he spoke to the couple for two hours. The man, whom the woman identified in court as the defendant, promised her that he "would take care of everything" and told her that his organization's lawyers would represent the couple in court.

On August 21, 1980, the defendant telephoned the woman and informed her that "management" wished to enter into a settlement whereby the couple would be compensated for their loss in the amount of $350, in return for the couple's execution of a release.

On August 22, 1980, the woman returned to her apartment at approximately 3:00 P.M. after attending a funeral. About 10 minutes later, the defendant rang the doorbell and flashed his badge. The woman again invited the defendant into her apartment and conferred with him for approximately one-half hour. The woman proceeded into the kitchen in order to execute the release. The defendant followed her, and, upon placing a knife at her throat, demanded that the woman give him her money and valuables. The defendant then escorted the couple to their bedroom, ransacked a chest of drawers, and took a $5 bill and the woman's solid gold watch. The defendant, who, by his own admission, was a hairdresser, was subsequently apprehended and convicted of several crimes, including burglary in the second degree.

## II

Former Penal Law of 1909 § 400 (3) defined the term "break", which was contained in the provisions dealing with the crime of burglary (see, former Penal Law §§ 402, 403, 404), as follows: "Obtaining an entrance into such a building or apartment, by any * * * artifice used for that purpose". The present Penal Law (see, Penal Law § 140.00 [5]) provides that a person may be convicted of the crime of burglary when he, inter alia, " 'enters or remains unlawfully' in or upon premises when he is not licensed * * * to do so".

The defendant argues that since the Legislature omitted the word "artifice" in the present Penal Law, its intent was to provide that a license or privilege to be in a particular premises was not vitiated if it was obtained through trick or misrepresentation.

We cannot agree with such an interpretation of the statute. Indeed, the incongruity of the defendant's argument has been recognized in several decisions at nisi prius as well as the Practice Commentaries to the Penal Law (see, *People v Ludlowe,* 117 Misc 2d 567; *People v Hutchinson,* 124 Misc 2d 487; Hechtman, Practice Commentaries, McKinney's Cons Laws of NY, Book 39, Penal Law § 140.00 [5], p 15). As was noted in *People v Hutchinson (supra,* at pp 488-490):

"The burglar who opens a door with a phony story instead of a screwdriver is a common enough phenomenon to have been explicitly addressed by the old Penal Law. Under that statute, the definition of burglary entailed breaking and entering, and the definition of breaking, in turn, expressly included obtaining entrance by threat or artifice. (Former Penal Law, §§ 402, 400, subd 3.)

"Under the revised Penal Law, there is no allusion to entry by deceit; a person commits a burglary when he enters or remains unlawfully in a building with the intent to commit a crime. (Penal Law, §§ 140.20-140.30.) Unlawful entry or remaining is, in turn, defined as an entry or remaining that is without license or privilege. (Penal Law, § 140.00, subd 5.) The failure of the revised law to mention expressly that entry by trick is not privileged or licensed has created some uncertainty; defendants charged with burglary or trespass have raised the defense of privilege or license, even though they may have gained ostensible privilege through subterfuge.

"Lower courts have correctly rejected this defense despite the lack of explicit statutory or appellate authority. *(People v Ludlowe,* 117 Misc 2d 567, *supra; People v Segal,* 78 Misc 2d 994, *supra.)* The purpose of the burglary statute is to protect against the specific dangers posed by entry into secured premises of intruders bent on crime. The intruder who breaches the barrier with a lie or deception, by pretending to deliver a package or to read a meter, is no less dangerous than his more stealthy cohorts, and nothing in the statute suggests an intent to exempt him from liability.

"Indeed, the original commentators on the revised statute, Justice Peter McQuillan and former Justice Richard Denzer,

themselves participants in its drafting, state with certainty that entry by trick or misrepresentation is unlawful. (Denzer & McQuillan, Practice Commentary, McKinney's Cons Laws of NY [1967 ed], Book 39, Penal Law, § 140.00, p 341.) Their interpretation is supported by the Penal Law's invocation of tort principles and terminology, viz., 'license' and 'privilege'. (See *People v Segal*, 78 Misc 2d 944, 949, *supra.*) Under principles of tort liability, a license or privilege to enter premises is acquired by consent of the owner (Restatement, Torts 2d, § 330). But when that consent is obtained by misrepresentation or fraud, there is no license. (Restatement, Torts 2d, § 330, Comment *g.*)

"Accordingly, when the evidence establishes that a defendant obtained permission to enter private premises by trick, fraud, or deceit, then he has entered without privilege or license".

We agree with these authorities, and, accordingly, the defendant's argument concerning the validity of his conviction for the crime of burglary in the second degree must be rejected.

## III

The defendant also argues on his appeal that the branch of his omnibus motion which was to dismiss the indictment should have been granted by Criminal Term on the ground that the prosecutor failed to advise the members of the Grand Jury that the defendant's prior criminal record—adduced during cross-examination of the defendant before the Grand Jury—was to be considered solely on the issue of his credibility and could not be viewed as an indication of his propensity toward criminal behavior.

We disagree with the defendant's argument.

It is true that pursuant to CPL 190.30 (former [6], now [7]), the prosecutor must instruct the Grand Jury in the same manner as a court presiding over a jury trial, pursuant to CPL article 60, "with respect to the significance, legal effect or evaluation of evidence" *(see,* CPL 190.30 [7]). In accordance with CPL article 60, and particularly CPL 60.40 thereof, "proof * * * of prior convictions is received only on credibility and the instructions to the jury must carefully delineate the distinction" (Bellacosa, Practice Commentary, McKinney's Cons Laws of NY, Book 11A, CPL 60.40, p 545; *see, People v Sandoval,* 34 NY2d 371, 374). Moreover, we are aware that two reported decisions at nisi prius have held that an indict-

ment may be dismissed as defective, pursuant to CPL 210.35 (5), when a prosecutor fails to advise the Grand Jury that evidence of the defendant's prior convictions may be utilized by it solely for the purposes of impeaching the defendant's credibility and not as substantive proof of guilt *(see, People v Adams,* 81 Misc 2d 528; *People v Hargrove,* 80 Misc 2d 317). Accordingly, the prosecutor in the instant case erred in failing to so advise the Grand Jury.

However, even in these cases, the watchword is the existence of "prejudice to the defendant" *(People v Adams, supra,* at p 530; *see, People v Hargrove, supra,* at p 328; *cf. People v Percy,* 74 Misc 2d 522, *affd* 45 AD2d 284, *affd* 38 NY2d 806). Indeed, the decision of this court in *People v Brown* (78 AD2d 903) is particularly instructive on this point. In *People v Brown,* the trial court, *inter alia,* allowed the prosecutor, during the trial to cross-examine the defendant regarding a prior assault committed against the victim, without giving a limiting instruction to the jury on the use of such testimony. In rejecting the defendant's argument that this omission constituted reversible error, this court stated *(People v Brown, supra,* at p 904): "the totality of the proof against the defendant overwhelmingly established his guilt. There was no significant probability that the jury would have acquitted the defendant had the error complained of not occurred". In the case at bar, the testimony adduced at the Grand Jury, including, *inter alia,* the testimony of the female victim, who clearly identified the defendant before the Grand Jury as the perpetrator, based upon her observations of him for a considerable length of time on two separate occasions, overwhelmingly pointed to the defendant's guilt. Therefore, in this case, the prosecutor's failure to charge the Grand Jury with respect to the evaluation of evidence of the defendant's prior convictions does not warrant the dismissal of the indictment. Nevertheless, we suggest, as did Criminal Term, that, in the future, the People should advise the Grand Jury that a defendant's prior criminal record is to be used solely to impeach his credibility and not as an indication of the defendant's propensity toward criminal behavior.

## IV

Finally, we have reviewed the defendant's remaining arguments and find them to be either without merit or unpreserved for appellate review *(see, People v Contes,* 60 NY2d 620;

*People v Lopez,* 109 AD2d 805; *People v Whalen,* 59 NY2d 273; *People v Rullo,* 31 NY2d 894; *People v Castillo,* 3 AD2d 963; *People v Benson,* 114 AD2d 506; *People v Reilly,* 93 Misc 2d 61). Accordingly, the judgment appealed from should be affirmed.

NIEHOFF, RUBIN and KUNZEMAN, JJ., concur.

Judgment of the Supreme Court, Queens County, rendered May 11, 1982, affirmed.