*18
 
 OPINION OF THE COURT
 

 Titone, J.
 

 The primary issue in this appeal is whether the trial court properly charged that the "enter or remain
 
 unlawfully”
 
 element of the crime of burglary may be satisfied by proof that the defendant harbored a secret intent to commit a crime within the premises. We conclude that the instruction was erroneous in that it merged two entirely separate elements— entering unlawfully and acting with the intent to commit a crime. Consequently, since the instruction on burglary was necessary to the jury’s consideration of the felony murder charge against appellant, his conviction on that charge must be reversed.
 

 Appellant was charged with two counts of murder in the second degree (Penal Law § 125.25 [1] [intentional murder]; [3] [felony murder]), burglary in the first degree (Penal Law
 
 *19
 
 § 140.30 [1]), and several weapons counts (Penal Law §§ 265.03, 265.02 [4]). The charges arose out of an incident, during the early morning hours of June 18, 1983, in which appellant shot and killed Tracy Smith in a Brooklyn apartment. The primary witnesses against appellant at trial were Smith’s girlfriend, LaShawn Finley, and codefendant Aaron Jones, who was accorded a favorable plea bargain in exchange for his testimony.
 

 Early in the evening, appellant had met Jones, Smith’s cousin, at a candy store, and Jones suggested that the two men go to Finley’s apartment where Smith had been staying. The two men arrived at the building at approximately 5:00 a.m. Jones, who had been in the apartment on numerous occasions, left appellant waiting downstairs while he went upstairs, entered through a closed but unlocked door, and then entered the room where Smith and Finley were sleeping. Jones conversed with Smith, who expressed no surprise in seeing Jones at his bedside so early in the morning. After a brief discussion, Smith gave Jones $10 to purchase beer and "reefer”. Jones then mentioned, "I got my man downstairs with me,” and Smith replied that it was "all right,” which Jones understood to mean that he could bring appellant into the apartment.
 

 When Jones returned to the lobby, he told appellant of his plan to steal a stereo from the apartment. Then, instead of entering the apartment through the unlocked front door, the two men went into a neighboring building, crossed over the roof and entered the apartment through a window. While appellant was in the process of disconnecting the stereo components, Smith and Finley awoke and a fight between Smith and appellant ensued. The melee ended when appellant shot Smith in the chest.
 

 In charging the jury on the essential elements of the crime of burglary, which was the predicate for the felony murder count, the court stated: "[A] person knowingly enters or remains unlawfully in a dwelling when he is aware that he has no license or privilege to enter or remain[ ].
 
 And to remain in a dwelling, regardless of how you entered it, because you have the intent to commit a crime is remaining unlawfully.
 
 By that, the law means that he has no right, authority or permission to enter or remain. * * * In this case you have heard testimony that the witness, Jones, testified that he was told by Tracy Smith, who was an occupant of the dwelling,
 
 *20
 
 that he could bring up his friend.
 
 But, if at the time the entry was made there was an intent to commit a crime, that would be an unlawful remaining.”
 
 (Emphasis supplied.) Appellant’s counsel objected to the charge, arguing that the court failed adequately to address the intent issue and improperly explained the element of "unlawfully remaining.” Appellant was found guilty of felony murder, manslaughter in the second degree, which had been submitted as a lesser included offense of the intentional murder count, and one count of criminal possession of a weapon in the third degree.
 
 [1]
 

 The Appellate Division affirmed, concluding that "[although the court’s charge on burglary * * * was inaccurate concerning the element of entering or remaining unlawfully * * * [t]he record establishes that even assuming that the defendant had permission to enter the apartment in which the shooting occurred, that permission had been obtained solely through the deception of a codefendant. Entry through deception is the same as entry without license or privilege for purposes of the statute” (149 AD2d 529). We now reverse.
 

 A person may be found guilty of burglary when he "knowingly enters or remains unlawfully in a dwelling with intent to commit a crime therein” (Penal Law § 140.30). "A person 'enters or remains unlawfully’ in or upon premises when he is not licensed or privileged to do so” (Penal Law § 140.00 [5]). In general, a person is "licensed or privileged” to enter private premises when he has obtained the consent of the owner or another whose relationship to the premises gives him authority to issue such consent
 
 (see, Barker v Parnossa, Inc.,
 
 39 NY2d 926, 928;
 
 Vaughan v Transit Dev. Co.,
 
 222 NY 79, 82; Restatement [Second] of Torts, §§ 329, 330; Annotation,
 
 Maintainability of Burglary Charge, Where Entry into Building is Made with Consent,
 
 58 ALR4th 335, §§ 10, 11). Under the former Penal Law, a person entering with the owner’s consent could nevertheless be guilty of burglary if the consent was obtained by "threat or artifice” (former Penal Law §§ 402, 403, 404, 400 [3];
 
 see,
 
 Denzer & McQuillan, Practice Commentary, McKinney’s Cons Law of NY, Book 39, Penal Law § 140.00, at 341 [1967]). Although the current Penal Law does not include analogous language, the lower courts and commentators have concluded that the same rule exists today
 
 (People v Griffin,
 
 147 AD2d 897;
 
 People v Dupree,
 
 122 AD2d 852;
 
 People v
 
 
 *21
 

 Thompson,
 
 116 AD2d 377;
 
 People v Hutchinson,
 
 124 Misc 2d 487;
 
 People v Ludlowe,
 
 117 Misc 2d 567; Denzer & McQuillan, Practice Commentary, McKinney’s Cons Laws of NY, Book 39, Penal Law, § 140.00, at 341 [1967];
 
 see,
 
 Restatement [Second] of Torts § 330, comment g, at 175;
 
 cf., People v Piro,
 
 121 AD2d 748;
 
 see also,
 
 Model Penal Code and Commentaries, Official Draft and Revised Comments § 221.1, at 68-70).
 

 Relying on this line of cases, the People contend that the court correctly charged that a person may be found to have entered or remained "unlawfully” if he harbored an intent to commit a crime at the time he entered the premises. We conclude, however, that this contention lacks merit, even assuming the validity of the cited cases, since those cases involve situations where the defendant obtained a license to enter premises through fraud or deception
 
 (see, People v Thompson, supra; People v Hutchinson, supra).
 
 Here, however, the jury was never instructed to consider whether appellant’s license to enter the apartment was obtained by such means
 
 (see, People v Hutchinson, supra,
 
 at 490). Thus, the Appellate Division’s conclusion that appellant obtained permission solely through Jones’ deception is not supported by a jury finding or by a review of the record.
 

 The notion of a secret intent to commit a crime at the time of entry always rendering a consented to entry unlawful eliminates the trespassory element, i.e., the unlawfulness of the entry, by making it coextensive with the intent required to establish a burglary. This is not what the case law or the former Penal Law provisions meant when they referred to obtaining entry through artifice or deceit. To the contrary, these references are to situations in which there exists both a hidden intent to commit a crime as well as the additional deceit in obtaining the license to enter the premises, for example, a trick as to an individual’s true identity
 
 (see, e.g., People v Griffin, supra; People v Thompson, supra).
 
 However, if intent alone were enough, it would convert every act of theft by a housekeeper, social guest or family member from a larceny to a burglary simply upon a showing that the person had intent to commit the crime prior to entering the premises. However, in situations where the "burglar” is known by the owner, there exists no invasion of premises especially likely to terrorize the occupants, and thus is far removed from the classic conception of burglary as a nighttime assault on a dwelling
 
 (see,
 
 Model Penal Code and Commentaries, Official Draft and Revised Comments § 221.1, at 67). Consequently, we
 
 *22
 
 see no valid reason to warrant the automatic transformation of garden variety larceny into the higher graded offense of burglary.
 

 This view of burglary in private premises is consistent with the statutory provisions involving burglary of public buildings, which insulate from liability for that crime "[a] person who,
 
 regardless of his intent,
 
 enters or remains in or upon premises which are at the time open to the public [since he] does so with license and privilege unless he defies a lawful order not to enter or remain, personally communicated to him by the owner of such premises or other authorized person” (Penal Law § 140.00 [5] [emphasis supplied];
 
 see, People v Powell,
 
 58 NY2d 1009;
 
 People v Licata,
 
 28 NY2d 113). Thus, in the case of public buildings, it is clear that the element of absence of license, or unlawfulness of the accused’s presence on the premises, is entirely independent of the element of criminal intent
 
 (see, People v Brown,
 
 25 NY2d 374, 376; Hechtman, Practice Commentaries, McKinney’s Cons Laws of NY, Book 39, Penal Law § 140.00, at 14, 16 [1975]).
 

 The People maintain that the explicit statutory mandate to disregard the actor’s criminal intent when considering his license or privilege to enter a
 
 public
 
 building suggests that a contrary rule was intended when
 
 private
 
 premises are involved. However, the legislative history of this provision does not support the People’s argument. This provision was enacted specifically to overrule
 
 People v Sine
 
 (277 App Div 908), which held that, under the former Penal Law, a person who enters a department store with the intention of shoplifting is guilty of an unlawful entry, as well as of any crime committed while on the premises (Staff Notes of Commission on Revision of Penal Law and Criminal Code, Proposed New York Penal Law, McKinney’s Spec Pamph, at 347-348 [1964]). Thus, in enacting this provision, the Legislature had in mind a specific problem relative to a class of
 
 public
 
 places, and there is no reason to infer that a broader rule, with implications for cases involving private premises, was intended.
 

 Finally, even though the trial court referred to appellant’s conduct as an unlawful remaining rather than an unlawful entering, this misuse of terminology does not affect the outcome since appellant either entered or remained unlawfully, but not both
 
 (see, People v Gaines,
 
 74 NY2d 358, 362, n 2). Whether appellant’s conduct is viewed as "entering” or "remaining”, the primary focus is still whether the conduct was
 
 *23
 
 unlawful. This determination requires an examination of appellant’s license or privilege to be on the premises, which in turn requires some consideration by the jury as to whether appellant had permission to be on the premises.
 

 Here, there was testimony that Smith had given his cousin permission to bring appellant into the apartment. However, the court’s charge required the jury to conclude that appellant was unlawfully on the premises simply if he possessed intent to commit a crime. Thus, the jury could have been misled to believe that burglary consisted of only one element — entering with intent to commit a crime — and might have completely failed to consider the fact that appellant had permission to be in the apartment.
 
 [2]
 
 Since appellant’s felony murder conviction was predicated on burglary, the felony murder conviction must be reversed and a new trial ordered on that count of the indictment.
 

 Appellant’s remaining contentions are either unpreserved or without merit.
 

 Accordingly, the order of the Appellate Division should be reversed and a new trial ordered.
 

 Bellacosa, J. (dissenting). I respectfully dissent. The order of the Appellate Division unanimously affirming the judgment of conviction based on a jury verdict finding defendant guilty of felony murder and related counts should be affirmed.
 

 The trial evidence established that defendant Graves, while
 
 *24
 
 in the act of burglarizing a Brooklyn apartment, shot and killed Tracy Smith. Defendant’s accomplice, Jones, who was Smith’s cousin, woke Smith up at 5:00 a.m. in the apartment and said, "I got my man [defendant-appellant] downstairs with me.” Smith said, "All right,” which Jones interpreted as permission for Graves and himself to enter the apartment. Jones went downstairs and sojourned with appellant Graves to an adjoining building, crossed over a roof and entered the apartment through a window. Graves’ and Jones’ only intent throughout was to steal a stereo from the apartment and get "high”. Graves was armed with a sawed-off shotgun and Jones carried a .22 caliber revolver.
 

 It is not our privilege or custom to isolate out-of-context portions of a trial court’s instructions to the jury
 
 (People v Russell,
 
 266 NY 147, 153). Yet, in this case, appellant successfully presses two sentences out of a very lengthy and detailed set of instructions. As to the burglary elements of the crimes charged, the Trial Justice stated: "And to remain in a dwelling, regardless of how you have entered it, because you have the intent to commit a crime is
 
 remaining unlawfully.
 
 * * * But, if at the time the entry was made there was an intent to commit a crime, that would be an
 
 unlawful remaining. ”
 
 (Trial transcript, at 358-359 [emphasis added].)
 

 My disagreement with the reversal of this conviction rests on a diametrically opposed perception of the nature of this case, its evidence and the relevance of the isolated portions of the instructions to the jury. First, the trial court did not merge the unlawful entry element of the burglary charge, the predicate felony on which the murder conviction pivots, with the intent element. Rather, the instruction, read reasonably in context and in relationship to the evidence adduced, alerted the jury that the same fact — defendant’s unlawful entry into the apartment through a window, carrying a shotgun, and with intent to commit an armed theft — could be used to establish more than one element of the crime charged. Second, the majority independently concludes and suggests the jury might have speculated that defendant did not gain entry to the apartment through lawful social invitation, but rather through unlawful deception. However, the undisturbed findings, the inescapable inferences and the cogent evidence support the conclusion that defendant was not granted "permission,” even through the "good offices” of his codefendant, to enter an apartment by crossing a roof, climbing through a window, armed with a shotgun, and intending from the outset
 
 *25
 
 to steal the victim’s stereo. From those evidentiary facts, the jury was entitled to conclude under correct instructions that Graves’ entry was plainly unlawful, irrespective of any deception by Jones. This scenario hardly depicts a "garden variety larceny” (majority opn, at 22) with Graves and Jones harboring "secret” intents (majority opn, at 21). Frankly, to swallow the theory that the victim "invited” this defendant into the apartment under these circumstances on the basis of an ambiguous conversational exchange with his cousin is ludicrous and adds insult to the fatal injury. To embellish the tableaux with the notion that Jones believed he and Graves were "invited” in under these circumstances also defies belief. Graves’ fable ends with our being asked to credit his tale that he and Jones RS.V.P.’d the "invitation” by climbing across a roof and through a window, only to shoot dead the host while stealing his stereo.
 

 Defendant focuses his primary claim on the argument that his undisclosed intention to commit a crime once inside the apartment does not qualify as unlawful deception to gain entry and that the trial court’s instruction in that connection requires reversal. The majority appears to accept this out-of-context and theoretical construct predicated on a fact pattern clearly contrary to the evidence. I reject the defendant’s artifice for the reasons already expressed, and because the preoccupation with the element of
 
 unlawful remaining
 
 is, at worst, mere surplusage to what this case is really all about. The Trial Justice, for example, concluded the lengthy technical instruction on the elements of burglary with this disjunctive admonition: "You will notice that the statute says 'Unlawful entry
 
 or
 
 remaining’ ”. (Emphasis added.)
 

 There is irrefutably on the proof, as found by the jury and affirmed by the Appellate Division, an
 
 unlawful entry
 
 and an intent to commit a crime in the apartment. Satisfaction of these two elements should be enough to affirm the conviction because they are what constitute the predicate crime charged here in order to convict of murder. The
 
 reductio ad absurdum
 
 illustrations about convicting all sorts of innocent guests, employees and family members on the theory and instructions in this case are just what the Latin phrase connotes — Cassandra-like absurdities. They cannot, should not, and will not happen based on the elementary principles of this case applied to the evidence adduced, and should not block us from coming to the correct result in this case.
 

 
 *26
 
 The trial court’s instruction, it respectfully seems to me, is being strained out of its natural context and range to imply that the presence of the element of "intent to commit a crime therein” itself and solely converted a speculatively privileged entry to the private dwelling into an unlawful one and, thus, into a burglary — either in this case or as a general proposition. But the trial court merely instructed the jury, awkwardly perhaps, that the same evidentiary facts, i.e., defendant’s intent to commit an armed theft proven by direct evidence, could inferentially support more than one element of the crime charged in what, except for the fatal outcome, could be viewed as an almost "Gang That Couldn’t Shoot Straight” unlawful entry. Awkward articulation is not reversible error, and precious parsing of selected phrases in jury instructions is not the test we have used; rather "[t]he test is always whether the jury, hearing the whole charge, would gather from its language the correct rules which should be applied in arriving at decision.”
 
 (People v Russell,
 
 266 NY,
 
 supra,
 
 at 153;
 
 People v Goodfriend,
 
 64 NY2d 695, 697.)
 

 I do not believe there can be any question that test was met in this case. It is the height of supposition to attribute to this jury a misunderstanding of the essence of this case and of the law principles governing its resolution.
 

 A reasonable assessment of this record and the governing authorities should result in an affirmance, as I perceive no reversible error and what error there might be, if any, is of the most harmless, innocuous variety.
 

 Chief Judge Wachtler and Judges Simons, Kaye, Alexander and Hancock, Jr., concur with Judge Titone; Judge Bellacosa dissents and votes to affirm in a separate opinion.
 

 Order reversed, etc.
 

 [1]
 

 . The jury did not reach the burglary count, since it had been instructed not to do so if it found appellant guilty of felony murder.
 

 [2]
 

 . The charge in this case was much more than simply "[ajwkward articulation” as suggested by the dissent (dissenting opn, at 26). To the contrary, the court’s instruction was clear that entering with intent to commit a crime constitutes "remaining
 
 unlawfully”
 
 — one of the
 
 two
 
 separate elements of burglary. Consequently, even applying the test articulated by the dissent, we conclude that the jury would
 
 not
 
 " 'gather from [the court’s charge] the correct rules which should be applied in arriving at decision.’ ” (Dissenting opn, at 26.)
 

 In addition, the dissent posits that there are "undisturbed findings” and "inescapable inferences” that appellant was not granted "permission” to enter the apartment (dissenting opn, at 24). However, since the jury was never instructed by the trial court to consider whether appellant had permission to enter the apartment, or if such permission was unlimited or conditional, there are no "findings” which are "undisturbed.” Finally, the dissent suggests that Jones had intent to commit a crime at the moment he obtained permission from Smith to enter the apartment, thereby receiving a license through trick or misrepresentation
 
 (see, People v Thompson,
 
 116 AD2d 377, 380). The jury was not, however, instructed to consider this question. Thus, this "factual finding” by the dissent is based on pure speculation as to what a properly instructed jury might have found, and this record does not support such a conclusion.