THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JACOB KONIKOV, Appellant.

Second Department, August 6, 1990

**APPEARANCES OF COUNSEL**

*Meissner, Kleinberg & Finkel (Richard A. Finkel* of counsel), for appellant.

*Charles J. Hynes, District Attorney (Jay M. Cohen* and *Ross Rhodes* of counsel), for respondent.

**OPINION OF THE COURT**

KOOPER, J.

The question to be answered on appeal is whether the People established the defendant's guilt of burglary in the second degree beyond a reasonable doubt. For the reasons that follow, we conclude that they did not.

I.

On Friday, May 23, 1986, at approximately 9:30 P.M., the defendant, a member of the orthodox Lubavitch community, arrived at the Brooklyn apartment house of his stepmother, Felicia Konikov,[1] also a Lubavitcher, and knocked on an outside door which opened into a small vestibule area. The vestibule was not part of Mrs. Konikov's apartment, and the building itself, which contained one other apartment, was owned by a third party. Mrs. Konikov had been awaiting the return of her two sons from synagogue services for sabbath dinner when she heard the knocking. She proceeded to the outer door, which had a "very small window", and peered outside, observing a man wearing a hat traditionally worn by members of the Lubavitch group. Mrs. Konikov could not see the man's face and asked if he was "Nissan", her son, but she received no reply. At this point, Mrs. Konikov opened the front door and the defendant entered the vestibule area, closing the outer door behind him.

According to Mrs. Konikov's direct testimony, after she had opened the front door and the defendant entered the vestibule, she again asked, "[w]ho are you, a guest?" to which the defendant allegedly replied, very clearly and loudly, "Jacob Joseph Konikov". On cross-examination, however, Mrs. Konikov testified that when she opened the door, the defendant exclaimed, "[c]ongratulations on your daughter's wedding", but then angrily demanded to know why he had not been invited to the affair, which was to take place a month later in June of 1986.

Mrs. Konikov then asked the defendant to leave, but he declined, stating that he wanted to wait inside her apartment in order to talk to her sons. Mrs. Konikov again asked the

---

1. Although the defendant's father married Mrs. Konikov in 1960, the defendant was apparently estranged from the family and had little contact with Mrs. Konikov, who testified on cross-examination that the defendant was not "allowed in the house" when she and the defendant's father were residing in Massachusetts some years prior to the acts complained of.

defendant to leave, but he refused, informing her that he would wait, so as to talk to her sons. Mrs. Konikov repeated that the defendant should leave, in response to which the defendant angrily demanded to know why he could not stay. During the argument, the defendant apparently "positioned himself" in some fashion between Mrs. Konikov's inner door and the vestibule door. According to Mrs. Konikov, she and the defendant continued to argue, when suddenly, the defendant punched her in the face, threw her to the ground and kicked her. The defendant then fled. Mrs. Konikov was brought to the hospital and remained overnight for observation and was released the next day.

## II.

Thereafter, the defendant was charged with burglary in the first degree and assault in the second degree.[2] The crimes of burglary in the second degree and assault in the third degree were charged as lesser included offenses. After a jury trial, the defendant was convicted of burglary in the second degree and assault in the third degree.

On appeal, the defendant argues, *inter alia,* that the proof adduced at trial with respect to the crime of burglary in the second degree was legally insufficient to establish his guilt beyond a reasonable doubt. In opposition to the defendant's assertions, the People contend that the defendant "unlawfully" entered the vestibule by "artifice or trick" because he did not answer Mrs. Konikov's request for identification and, in any event, "remained unlawfully" therein, since Mrs. Konikov demanded that he leave shortly after he had entered. The People further contend that the evidence established beyond a reasonable doubt that the defendant intended to subsequently assault the complainant at the time that he initially and "unlawfully" entered the premises by "artifice or trick". The People alternatively contend that the proof also established that the defendant formed the intent to assault Mrs. Konikov, at the very latest, when she commanded him to leave the building, thereby presenting an issue for the jury's resolution

2. The People's theory at trial, and as charged to the jury, was that the defendant's use of his shoe, apparently when he allegedly kicked Mrs. Konikov, constituted the use of a "dangerous instrument" for the purposes of the counts charging the defendant with burglary in the first degree (Penal Law § 140.30 [3]) and assault in the second degree (Penal Law § 120.05 [2]).

with respect to the defendant's commission of a burglary. We find otherwise and reverse.

## III.

As we have observed, "[t]he purpose of the burglary statute is to protect against the specific dangers posed by entry into secured premises of intruders bent on crime" *(People v Thompson,* 116 AD2d 377, 380). A person may be found guilty of burglary when he "knowingly enters or remains unlawfully in a dwelling with intent to commit a crime therein" (Penal Law § 140.30; *see also, People v Graves,* 76 NY2d 16; Penal Law § 140.25). Moreover, " '[t]he word "remain" in the phrase "enter or remain" is designed to be applicable to cases in which a person enters with "license or privilege" but remains on the premises after the termination of such license or privilege' " *(People v Licata,* 28 NY2d 113, 117, quoting from Denzer and McQuillan, Practice Commentary, McKinney's Cons Laws of NY, Book 39, Penal Law § 140.00, at 341-342 [1967]; Penal Law § 140.00 [5]; *see also, People v Gaines,* 74 NY2d 358, 362; 2 LaFave & Scott, Substantive Criminal Law § 8.13 [b], at 468).

Notably, "[u]nder the former Penal Law, a person entering with the owner's consent could nevertheless be guilty of burglary if the consent was obtained by 'threat or artifice' " *(People v Graves, supra,* at 20). While "the current Penal Law does not include analogous language, the lower courts and commentators have concluded that the same rule exists today" *(People v Graves, supra,* at 20; *see also, People v Griffin,* 147 AD2d 897; *People v Thompson, supra; People v Hutchinson,* 124 Misc 2d 487, *affd* 121 AD2d 849; Denzer and McQuillan, Practice Commentary, McKinney's Cons Laws of NY, Book 39, Penal Law § 140.00, at 341 [1967]).

The Court of Appeals has very recently reaffirmed that, in order to establish the commission of a burglary, the People must prove that "the act constituting the criminal trespass be accompanied by contemporaneous intent to commit a crime" *(see, People v Gaines,* 74 NY2d 358, 362, *supra;* Donnino, Practice Commentary, McKinney's Cons Laws of NY, Book 39, Penal Law art 140, at 8-12 [1988]). "When the statutory acts of entry are established, and it is also established that they were accomplished with the intent to commit a second crime, the crime of burglary is complete" (1 Callaghan, Criminal Law New York § 21:03, at 21-4 [3d ed]).

Although the Legislature has categorized burglary as a serious felony "because of the heightened danger posed when an unlawful intrusion into a building is effected by someone bent on a criminal end" *(see, People v Gaines, supra,* at 362), "[a] defendant who simply trespasses with no intent to commit a crime inside a building does not possess the more culpable mental state that justifies punishment as a burglar" *(see, People v Gaines, supra,* at 362). The Court of Appeals has recently rejected attempts by the People to broaden the scope of criminal liability insofar as the burglary statute is concerned *(see, People v Gaines, supra; see also, People v Graves,* 76 NY2d 16, *supra).* More specifically, in *People v Gaines (supra,* at 361-362), the court rejected, *inter alia,* the contention that the "remains unlawfully" language of the statute contemplates the imposition of liability merely upon a showing that at some point after an unlawful entry the defendant committed a crime while on the premises, and it further held in *People v Graves (supra)* that a person who enters premises with license does not "unlawfully" enter because he possesses a "secret" intent to commit a crime therein. In so holding, the court pointedly emphasized that the two component parts of the crime—unlawful entry or remaining and the contemporaneously formed intent to commit a crime in the building unlawfully entered—are discrete elements to be described as such by the court's charge to the jury and to be proven by the People at trial *(see, People v Graves, supra; People v Gaines, supra,* at 362; *see also, People v Roberts,* — AD2d — [2d Dept, June 25, 1990]; *People v Ferguson,* 158 AD2d 712).

## IV.

Initially, we reject the People's assertion that the defendant entered the premises "unlawfully" by "artifice or trick" merely because he did not respond to Mrs. Konikov's request for identification at the vestibule door. To the contrary, the evidence indicates that after knocking and standing at the door of a person who was acquainted with his appearance, the defendant took no further action in order to induce Mrs. Konikov to admit him to the vestibule.

Nor is there anything in the record supporting the People's assertion that the defendant's silence must be construed as a deceitful ploy in light of his estrangement from Mrs. Konikov's family. The questionable premise apparently underlying

the People's theory in this respect is that such an individual is more likely to be admitted to an apartment by withholding his identity than by responding to the householder's request that he provide it. Moreover, the record is not supportive of the People's related contention that the defendant must necessarily have believed that his only hope of speaking to Mrs. Konikov at the apartment was through the use of some type of ruse or subterfuge. Although Mrs. Konikov testified briefly on cross-examination that the defendant was "not allowed in the house" when she and the defendant's father were living in Massachusetts some years prior to the assault, she never testified in accord with the People's present assertion that the defendant was "unequivocally barred" from her Brooklyn apartment. Accordingly, neither the circumstantial evidence relied on by the People nor the defendant's failure to respond to Mrs. Konikov's inquiries, establishes that the defendant entered the vestibule "unlawfully" by "artifice or trick" *(cf., People v Thompson,* 116 AD2d 377, *supra; People v Hutchinson,* 124 Misc 2d 487, 489, *supra).* In any event, "the jury was never instructed to consider whether [the defendant's] license to enter the apartment was obtained by such means" *(see, People v Graves,* 76 NY2d 16, 21, *supra)* and, accordingly, the People's assertion that the defendant obtained permission to enter through a "deception is not supported by a jury finding or by a review of the record" *(see, People v Graves, supra,* at 21, 23, n 2; *People v Hutchinson, supra,* at 489-490).

## V.

More significantly, the evidence adduced at bar was legally insufficient to establish beyond a reasonable doubt that the defendant intended to commit an assault when he knocked on Mrs. Konikov's door or subsequently, when she ordered him to leave the building. In "deciding whether the People met their burden, we are required to say whether, considering the facts proved and the inferences that could reasonably be drawn therefrom, a jury could conclude that there was no reasonable doubt that the defendant, if found to be the culprit, intended to burglarize the apartment" *(People v Castillo,* 47 NY2d 270, 277; *see, People v Barnes,* 50 NY2d 375, 381; *People v Bracey,* 41 NY2d 296). Although "in judging whether a prima facie case has been made out, the questions of fact must be assumed to have been decided for the People *(People v Benzinger,* 36 NY2d 29), the foundation for the findings must be facts and inferences that are so reasonable that they cannot be confused

with mere conjecture or suspicion" *(People v Castillo, supra,* at 277).

A review of the evidence discloses that neither in quality nor quantity, was the proof adduced at trial sufficient to elevate the inferences to be drawn with respect to the defendant's contemporaneously formed intent beyond that of suspicion or conjecture *(cf., People v Castillo, supra).* The People's contentions to the contrary rest upon a strained construction of disparate circumstantial factors, on which they rely in order to support their assertion that the defendant harbored a malevolent intent to assault Mrs. Konikov from the inception of the incident.

## VI.

We note that the People's reliance upon the "remains unlawfully" prong of the burglary statute, apparently so as to narrow the temporal proximity of the assault to alleged formation of the requisite criminal intent, does not enhance the probity of the evidence adduced with respect to the defendant's alleged contemporaneously formed intent to commit an assault. Rather, the People's theory in this respect merely serves to further buttress the inference that the events which transpired in the vestibule occurred spontaneously and as part of the same rapidly evolving transaction. More fundamentally, we question whether the framers of the "remains unlawfully" language intended to transform a misdemeanor assault into the more serious felony of burglary in the second degree, merely upon a showing that the complainant, during a rapidly escalating verbal dispute, ordered the defendant to leave an apartment vestibule immediately prior to the assault. Such an expansive construction of the statutory term appears to be inconsistent with the purpose originally underlying its enactment.

In *People v Gaines* (74 NY2d 358, *supra)* the Court of Appeals examined the "remains unlawfully" language and observed that by adding that phrase the framers of the statute principally intended to address circumstances involving an "unauthorized remaining in a building after lawful entry (as a shoplifter who remains on store premises after closing)" *(People v Gaines, supra,* at 362; *see also, People v Graves,* 76 NY2d 16, *supra; People v Hutchinson,* 124 Misc 2d 487, *supra).* Indeed, "[t]he paradigm example of a lawful entry that con-

verts to an unlawful remaining is when a person enters a store or office during business hours, and then secretes himself inside after the premises is closed to the public" *(People v Hutchinson, supra,* at 491). The circumstances at bar appear to be in marked contrast to the intended scope and application of the "remains unlawfully" prong of the statute as recently discerned by the Court of Appeals in *People v Gaines (supra).*

## VII.

In any event, none of the factual incidents which preceded the assault sufficiently supports the inference that the defendant harbored the intent to assault Mrs. Konikov when she ordered him to leave the vestibule. While the evidence, viewed in a light most favorable to the People, suggests that the defendant was angry and intent upon entering the premises, his actions in this respect do not, as the People theorize, support the inference that he contemporaneously intended to assault Mrs. Konikov merely because a violent altercation ensued after the two had argued. Indeed, the reasonable inferences to be drawn from the events surrounding the assault are as consistent with the conclusion of spontaneously committed violence, if not more so, than they are with the People's speculative attempt to portray the defendant as an intruder bent upon assaulting Mrs. Konikov in her home *(cf., People v Castillo,* 47 NY2d 270, *supra).*

The People's assertion that the defendant must have "known" that he was not welcome in his stepmother's Brooklyn home, their intimation that he purposely called on her when her children were at the synagogue, and the inconclusive observation that the defendant may have been angry or animated during an argument, are not factors which reveal the existence of the requisite contemporaneous intent to commit an assault. Moreover, the record belies the People's speculative contention that the defendant positioned his body to "trap" Mrs. Konikov and "block her means of escape", since Mrs. Konikov testified only that the defendant "positioned" his body in the vestibule in some fashion as the argument progressed. Nor does the record provide support for the conjecture that the defendant's positioning himself in front of Mrs. Konikov during the argument was intended as a prelude to a subsequent assault rather than as a means of ensuring that the reluctant complainant was listening attentively to his entreaties.

## VIII.

In short, neither the defendant's assaultive conduct nor the events which preceded it, constituted evidence sufficient to support an inference that the defendant arrived at the complainant's doorstep with an intent to assault her, or that he contemporaneously harbored such an intent while "remaining unlawfully" in the apartment vestibule. To sustain the defendant's conviction under the circumstances presented, would be to impose liability for the crime of burglary merely because the assault was preceded by the victim's demand that the defendant exit the premises. Under the circumstances presented, we decline to extend the reach of the burglary statute in such a fashion (cf., People v Graves, 76 NY2d 16, supra; People v Gaines, 74 NY2d 358, supra). In light of the foregoing, the defendant's conviction of burglary in the second degree must be reversed.

We have reviewed the defendant's remaining contentions and find them to be without merit.

BRACKEN, J. P., BROWN and LAWRENCE, JJ., concur.

Ordered that the judgment is modified, on the law and the facts, by reversing the conviction of burglary in the second degree and vacating the sentence imposed thereon; as so modified, the judgment is affirmed, and the matter is remitted to the Supreme Court, Kings County, for further proceedings pursuant to CPL 460.50 (5).