[939 NYS2d 341]

In the Matter of Lonique M., a Person Alleged to be a Juvenile Delinquent, Appellant.

First Department, February 16, 2012

APPEARANCES OF COUNSEL

*Tamara A. Steckler*, *The Legal Aid Society*, New York City (*Selene D'Alessio*, *Steven Banks* and *Eileen Malunowicz* of counsel), for appellant.

*Michael A. Cardozo*, *Corporation Counsel*, New York City (*Fay Ng* of counsel), for presentment agency.

### OPINION OF THE COURT

RICHTER, J.

In this juvenile delinquency proceeding, the evidence at the fact-finding hearing established the following. On January 2, 2010, at approximately 9:20 P.M., Police Officer Salvatore Tevere and his partner arrived at 2230 Grand Concourse, a six-floor residential apartment building in the Bronx containing "many apartments" on each floor. The building was part of the "Clean Halls" program, where police officers have the right to enter the building to check whether illegal activities are being conducted inside. The entrance to the building was secured by an iron gate requiring the use of a key or a buzzer entry; there was also a separate front door.

The officers entered the building to conduct a "vertical" patrol, which entailed going to the top floor and checking the building, floor by floor, for "illegal activity of people looting in the building [or] trespassing." After making sure the lobby was clear, Officer Tevere and his partner waited for the elevator. When the elevator doors opened in the lobby, Officer Tevere observed appellant and another youth, Aaron B., looking "shocked." According to the officer, "[t]heir eyes were wide open and they seemed very nervous." No one else was in the elevator. Officer Tevere noticed the smell of marijuana in the elevator, and saw Aaron throw what the officer believed was a lit marijuana cigarette to the floor. The officer then escorted the

two youths out of the elevator and recovered the marijuana cigarette.

Officer Tevere asked appellant and Aaron if they lived in the building, and both replied that they did not. When the officer asked why they were in the building, Aaron answered that he was there to visit his friend Christopher, who lived in apartment 2A; appellant initially agreed with him. Tevere continued to question the youths, asking if they were actually there to visit Christopher. In response, appellant told Aaron, "Tell them the truth," adding, "I don't want to get in trouble." When Officer Tevere again asked why they were in the building, appellant admitted that they were smoking on the sixth floor. Officer Tevere subsequently placed appellant and Aaron under arrest.

Maurice McKenzie, an employee of the company that managed the building, testified that according to the tenant list, appellant did not live there. Mr. McKenzie further testified that a woman named Blankes Nunez lived in apartment 2A with her father and her two children, none of whom was named Christopher.* The court credited the testimony of the two witnesses and found that the evidence established beyond a reasonable doubt that appellant committed an act that, if committed by an adult, would constitute the crime of criminal trespass in the second degree (Penal Law § 140.15 [1]).

A person is guilty of criminal trespass in the second degree when, in pertinent part, he "knowingly enters or remains unlawfully in a dwelling" (Penal Law § 140.15 [1]). A person "enters or remains unlawfully" in or upon premises "when he is not licensed or privileged to do so" (Penal Law § 140.00 [5]). "In general, a person is 'licensed or privileged' to enter private premises when he has obtained the consent of the owner or another whose relationship to the premises gives him authority to issue such consent" (*People v Graves*, 76 NY2d 16, 20 [1990]). The prosecution bears the burden of proving the absence of such license or privilege (*People v Brown*, 25 NY2d 374, 377 [1969]). The lack of a license or privilege to enter may be established by circumstantial evidence (*People v Quinones*, 173 AD2d 395, 396 [1991], *lv denied* 78 NY2d 972 [1991]).

Appellant argues that the evidence was legally insufficient to prove that he did not have a license or privilege to be in the building. In reviewing the sufficiency of the evidence in a juvenile delinquency proceeding, "the applicable standard is

---

* Appellant did not testify or call any witnesses.

whether, after viewing the evidence in a light most favorable to the presentment agency, the quantity and quality of the evidence is sufficient to show that the essential elements of the crimes charged have been proven beyond a reasonable doubt" (*Matter of Ashley M.*, 30 AD3d 178, 179 [2006]; *see People v Malizia*, 62 NY2d 755, 757 [1984], *cert denied* 469 US 932 [1984]). In conducting its review, the Family Court's findings should be accorded great weight and should not be disturbed unless clearly unsupported by the record (*Matter of Donnell W.*, 20 AD3d 431, 432 [2005]). Moreover, the court's assessment of the witnesses' credibility is entitled to great deference on appeal (*Matter of Malik E.*, 85 AD3d 784, 785 [2011]).

Applying these principles, we conclude that there was legally sufficient evidence to find that appellant committed an act constituting second-degree criminal trespass. Moreover, the finding was not against the weight of the evidence. The circumstantial evidence established that appellant entered the building without the requisite license or privilege. First, appellant expressly admitted that he did not reside in the building, a fact confirmed by the testimony of the building employee. Next, when the police officer asked appellant why he was in the building, appellant admitted that he was there for the unlawful purpose of smoking marijuana on the sixth floor. This fact was confirmed by the officer's testimony that he smelled marijuana in the elevator and saw appellant's companion throw what the officer believed was a lit marijuana cigarette to the floor.

Appellant obviously lied to the police officer about why he was in the building. Appellant's companion told the police he was in the building to visit Christopher in apartment 2A. However, the building employee testified that no one named Christopher lived in that apartment. Although appellant initially agreed with his friend's story about visiting apartment 2A, he changed his tune upon further questioning. Appellant finally admitted the real reason he was in the building—to smoke marijuana on the sixth floor—and encouraged his friend to "[t]ell [the police] the truth" because he did not "want to get in trouble." Appellant's false statements to the police are evidence of consciousness of guilt (*see People v Ficarrota*, 91 NY2d 244, 250 [1997]; *see also People v Babarcich*, 166 AD2d 655, 655 [1990], *lv denied* 76 NY2d 1019 [1990]).

This case is similar to *Matter of Ryan R.* (254 AD2d 49 [1998]), where this Court upheld a finding of criminal trespass. In *Ryan R.*, the appellant entered the front door of the building, which

was usually locked, without using a key or the intercom, was standing in the vestibule counting money next to a person holding a tin of cocaine, and told the officer that he resided at an address different from that of the building and that he had been making change for the person who had been standing near him. Likewise here, appellant was in the elevator of a locked and secure building engaging in unlawful activity, admitted that he did not live there and lied about the reason he was in the building.

Appellant argues that the presentment agency failed to rule out the possibility that one of the numerous tenants in the building gave appellant permission to be in the building. Thus, under appellant's view, the presentment agency had to call every single tenant as a witness. Such an onerous requirement, however, would eviscerate the rule allowing circumstantial evidence to establish the lack of license or privilege. In *People v Quinones* (173 AD2d at 396), we specifically held that "the testimony of one or all of those who could consent to entry is not in all cases indispensable." Here, the circumstantial proof offered at the hearing, including the admissions of appellant and the testimony of the building employee, was sufficient to sustain the court's finding that appellant was in the building without permission.

Appellant's reliance on *Matter of Daniel B.* (2 AD3d 440 [2003]) and *Matter of James C.* (23 AD3d 262 [2005]) is misplaced. In *Daniel B.*, a police officer observed the appellant in the lobby of an apartment building. The appellant told the officer that he did not live in the building and was just "hanging [out]" (2 AD3d at 441), but failed to offer an explanation for his presence. In *James C.*, the appellant was approached by a police officer in the lobby of the building. Although the appellant told the officer he was "hanging out" (23 AD3d at 262) with friends, he did not provide the officer, in response to the officer's questions, with the name or apartment number of his friends. In each case, the court vacated the fact-finding order finding, inter alia, that it was not the appellant's obligation to explain his presence in the building. Here, however, appellant did more than simply fail to explain his presence in the building—he affirmatively made a false statement about his reason for being there.

We similarly reject appellant's challenge to the facial sufficiency of the petition.

Accordingly, the order of disposition of the Family Court, Bronx County (Nancy M. Bannon, J.), entered on or about Janu-

ary 3, 2011, which adjudicated appellant a juvenile delinquent upon a fact-finding determination that he committed an act that, if committed by an adult, would constitute the crime of criminal trespass in the second degree, and placed him on probation for a period of nine months, should be affirmed, without costs.

TOM, J.P., FRIEDMAN, FREEDMAN and MANZANET-DANIELS, JJ., concur.

Order of disposition, Family Court, Bronx County, entered on or about January 3, 2011, affirmed, without costs.