■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v SAMUEL McCULLOUGH, Appellant.—Appeal by the defendant from a judgment of the County Court, Rockland County (Edelstein, J.), rendered August 1, 1985, convicting him of murder in the second degree, upon a jury verdict, and imposing sentence.

Ordered that the judgment is affirmed.

The defendant stands convicted of the stabbing death of Marie Jefferson sometime between her disappearance on Octo-

ber 3, 1984, the last date she was seen alive, and October 11, 1984, the date her body was found near a dumpster located behind a Holiday Inn in Nanuet, New York.

We find that the People met their burden of proof beyond a reasonable doubt, notwithstanding the fact their entire case was based on circumstantial evidence, since the inference of guilt is the only one that can fairly and reasonably be drawn from the facts and the evidence excluded beyond a reasonable doubt every reasonable hypothesis of innocence *(see, People v Sanchez,* 61 NY2d 1022, 1024). Three witnesses testified to having seen the defendant with Ms. Jefferson as she was leaving work on October 3, 1984, at approximately 4:00 P.M. and also identified the clothes found on Ms. Jefferson's body as identical to those she wore that afternoon. Two of these witnesses stated they saw the defendant forcing her down the street to his car. Two other witnesses testified to seeing the defendant's car leaving the area where the body was found at approximately 5:30 P.M. the same afternoon. The medical examiner estimated the time of death on or within a day of October 3, 1984. When questioned by the police, the defendant stated he was in Pleasantville, New Jersey, on October 3, 1984. However, his cousin Thelma Gholston who lived in Pleasantville stated that he did not arrive until October 4, 1984, and had asked her to tell anyone who asked that he arrived on October 3, 1984. The defendant also admitted to Ms. Gholston that he had beaten Ms. Jefferson the night before. It was also made clear that the defendant frequented the Holiday Inn in Nanuet although he had told the police when initially questioned that he had never been there. Furthermore, in a subsequent conversation with his ex-wife the defendant admitted to knowing that Ms. Jefferson's body had been found by police with a stab wound in the chest. The defendant stated he had obtained this information from a radio broadcast. However, a representative from the radio station in question testified that the broadcasts never mentioned that Ms. Jefferson had been stabbed.

We initially note that the Grand Jury proceedings were not prejudiced by the prosecutor's refusal to produce witnesses requested by the Grand Jury. CPL 190.50 (3) provides that a Grand Jury may ask that witnesses be produced and it may direct the District Attorney to subpoena witnesses. However, CPL 190.25 (1) provides that any official action taken by the Grand Jury must be by at least 12 of the jurors. Furthermore, courts in this State have repeatedly held that the issue of defective Grand Jury proceedings hinges on the effect of the

alleged error on the Grand Jury investigation *(People v Suarez,* 122 AD2d 861, *lv denied* 68 NY2d 817; *People v Holmes,* 118 AD2d 869; *People v Thompson,* 108 AD2d 942) and the resultant prejudice to the defendant *(People v Di Falco,* 44 NY2d 482, 487-488; *People v Thompson,* 116 AD2d 377, 382; CPL 210.35). At bar, the absence of the witnesses requested in no way could have changed the Grand Jury's mind regarding its decision to return an indictment. One witness's testimony would have been damaging to the defendant since he had previously identified the defendant's car as the one he saw in the Holiday Inn parking lot. The second witness was never found and, accordingly, was not produceable anyway.

We also find the defendant's contention that he was deprived of a fair trial when the prosecutor delved into the facts of prior vicious acts explicitly precluded by the court's pretrial *Sandoval (see, People v Sandoval,* 34 NY2d 371) ruling to be without merit. The prior acts complained of involved an alleged assault with an ax upon Ms. Jefferson and a subsequent legal agreement whereby the defendant promised to refrain from beating Ms. Jefferson. The court's *Sandoval* ruling specifically stated that if the defendant attempted to offer evidence of an amicable relationship with Ms. Jefferson just prior to her disappearance, he would have "opened the door" to his prior acts for purposes of impeachment *(see, e.g., People v Chaitin,* 61 NY2d 683; *People v Melendez,* 55 NY2d 445). Although this testimony was never elicited, the defendant clearly opened the door to cross-examination as to the axing incident by volunteering the information on direct examination and then attempting to explain it was not he who instigated the incident. After bringing this topic before the jury, he laid himself open for cross-examination *(see, Brown v United States,* 356 US 148, *reh denied* 356 US 948). Similarly, the "door was opened" regarding the introduction of the defendant's written promise not to beat Ms. Jefferson since it implied, contrary to the defendant's direct testimony, that it was the defendant who started the altercation.

The defendant is correct in his assertion that the prosecutor erred when he asked him if he had testified before the Grand Jury *(see,* CPL 60.15 [2]). The question clearly implied that the defendant had invoked his right against self-incrimination *(see, People v Crimmins,* 36 NY2d 230). However, the error was harmless beyond a reasonable doubt in light of the strong curative instruction offered and the overwhelming evidence of guilt *(see, People v Arce,* 42 NY2d 179; *People v Corley,* 140

AD2d 536; *People v De Tore,* 34 NY2d 199; *People v Crimmins, supra; People v Allen,* 127 AD2d 840, *lv denied* 69 NY2d 947).

We note the fact that the medical examiner who testified at the trial was the father of the prosecutor did not create an impermissible conflict of interest. "The courts, as a general rule, should remove a public prosecutor only to protect a defendant from actual prejudice arising from a demonstrated conflict of interest or a substantial risk of an abuse of confidence (e.g., *People v Zimmer,* 51 NY2d 390, *supra; People v Shinkle,* 51 NY2d 417, 421) and the appearance of impropriety, standing alone, might not be grounds for disqualification. The objector should demonstrate actual prejudice or so substantial a risk thereof as could not be ignored" *(Matter of Schumer v Holtzman,* 60 NY2d 46, 55). At bar, while it might be argued that an appearance of impropriety might be present, the defendant offered no demonstration whatsoever of prejudice.

We have considered the defendant's remaining contentions and find them to be either unpreserved for appellate review or without merit. Brown, J. P., Kunzeman, Rubin and Kooper, JJ., concur.