OPINION OF THE COURT
Charles J. Heffernan, Jr., J.
This case presents a question of first impression: whether a District Attorney whose office unsuccessfully prosecuted a defendant for murder, and who later actively petitioned the Attorney General of the United States for an investigation which resulted in Federal charges against defendant for the same conduct which formed the basis of his State murder trial, should be disqualified from subsequently prosecuting that defendant for unrelated charges. For the reasons which follow, the question should be answered in the negative.
THE FACTS
Defendant stands charged with assault in the third degree (Penal Law § 120.00 [2]) and related charges stemming from a street encounter between himself and a police officer on June 23, 1995 in Kings County. Through his counsel, defendant has moved for an order removing the Kings County District Attorney from the instant prosecution and appointing a Special District Attorney pursuant to County Law § 701. The People oppose the motion.
To place the motion in lucid context, it is necessary to briefly review defendant’s controversy beset involvement with the law in Kings County during the past four years. On August 19, 1991, Yankel Rosenbaum, 29, an Australian rabbinical student, was fatally stabbed in the Crown Heights section of Brooklyn *667 during a riot that began three hours earlier when a seven-year-old black child was hit and killed by a car driven by an Hasidic man. Defendant was arrested on August 26, 1991, and later indicted for second degree murder pertaining to the death of Mr. Rosenbaum. On October 30, 1992, following a highly publicized five-week trial in the Supreme Court in Kings County, defendant was acquitted of all charges. The verdict was met by vigorous, extended protest in some quarters, and was followed by two events implicated in the motion before this court. First, on November 17, 1992, the then-Governor of New York State issued an Executive Order directing a review of the criminal investigation and prosecution arising from the Rosenbaum murder. A report relating the findings of that review was later filed with the Governor.[1]
[2]That report was, in part, critical of the prosecution of the murder case by the office of the Kings County District Attorney.
Second, during the period of public discontent with the acquittal, the Kings County District Attorney, Charles J. Hynes, requested the Attorney General of the United States to authorize a Federal Grand Jury investigation of the circumstances attending the Rosenbaum death. As a result of that investigation, on August 10, 1994, the United States Attorney for the Eastern District of New York filed a juvenile information charging defendant with an act of juvenile delinquency involving civil rights offenses against Mr. Rosenbaum, in violation of 18 USC §§ 2 and 245 (b) (2) (B).[2] The charges before this court are independent of the Federal prosecution.
THE POSITIONS OF THE PARTIES

Defendant’s Argument:

In support of his motion seeking removal of the Kings County District Attorney from the instant case, defendant advances the following principal arguments: (1) defendant’s 1992 trial received extensive pretrial publicity and was covered daily on television; (2) after defendant’s acquittal at that trial “the [Kings County District Attorney] through Charles Hynes together with the Lubavitcher Sect of the hasidic [sic] com *668 munity and various and sundry politicians petitioned Attorney General Janet Reno to try Mr. Nelson on Civil Rights charges arising out of the death of Yankel Rosenbaum”;[3] (3) Mr. Hynes "who planned to, and did run for the office of Attorney General, has praised the Federal Government with respect to their ongoing prosecution of Mr. Nelson”;[4] (4) the Kings County District Attorney has informed counsel that there will be no plea offer in this case, and "[traditionally these types and kinds of cases have been disposed of or have been adjourned in contemplation of dismissal”;[5] (5) the collective actions of the Kings County District Attorney constitute overzealous prosecution of the present case and demonstrate prejudice and abuse of the expected confidence that defendant will be fairly prosecuted.

The People’s Argument:

The People first argue that County Law § 701 confers authority to appoint a Special District Attorney only upon a superior criminal court. The People, however, also cite People v Wyatt (140 Misc 2d 69, 72-73 [Crim Ct, Bronx County 1988]) for the proposition that the criminal court does have authority to disqualify a District Attorney.
Next, the People argue that notwithstanding the jurisdiction issue, appointment of a Special District Attorney would be unwarranted in this case, since defendant has failed to meet his burden to establish that there exists here either " 'actual prejudice arising from a demonstrated conflict of interest’ ”, or a " 'substantial risk of an abuse of confidence’ ” (People v Keeton, 74 NY2d 903, 904 [1989]). The People deny that the Kings County District Attorney harbors animosity against defendant because of the 1992 acquittal in the murder prosecution, and dispute defendant’s contention that he is being unfairly prosecuted. Rather, the People contend that denial of a lesser plea offer in this case is simply a mark of vigorous prosecution not amounting to inappropriate exercise of the prosecutorial function.[6]
*669 THE LEGAL ANALYSIS
This motion engages two issues: first, whether this court has jurisdiction to grant the relief sought; second, whether defendant is entitled to that relief on the merits of this case.

The Jurisdiction Question:

May the Criminal Court Disqualify a District Attorney?

Turning first to the jurisdiction issue, this court holds that although County Law § 701 reserves to a superior criminal court the authority to appoint a Special District Attorney, the statute neither states nor suggests that a local criminal court lacks jurisdiction to determine whether a District Attorney should be disqualified from prosecuting a case. Moreover, the existence of such jurisdiction flows from the plain-face meaning of that statute, as well as from decisional law.
Carefully read, County Law § 701 is a two-tiered statute. The first tier is a series of conditions which implicate the second tier, by which a superior criminal court may appoint a Spepial District Attorney. The necessary predicates for that action include a situation in which a District Attorney is "disqualified from acting in a particular case to discharge his or her duties at a term of any court.”[7] (Emphasis supplied.) Two points should be made in this regard. First, as noted above, the terms of the statute do not, either explicitly or by implication, divest a local criminal court of jurisdiction to consider a disqualification issue. Second, both judicial economy and good order would *670 suggest that the issue be resolved by the local criminal court in a prosecution pending therein. The trial court, being most familiar with the facts of the individual case, would appear amply qualified to pass on such a motion. Additionally, its doing so would promote judicial economy. That is, should the disqualification motion be denied at the nisi prius court, the matter need go no further in the normal course. Also, should the motion be granted by the lower court, the task of the superior criminal court would be the less onerous one of selecting the successor prosecutor. Thoughtful decisional law accords with such analysis. (People v Cassidy, 118 Misc 2d 110, 112, n 2 [Crim Ct, Kings County 1983].)[8]

The Merits: Should the Kings County District Attorney Be Disqualified From This Prosecution ?

Turning next to the merits of the disqualification motion, it is helpful to recall the "well-settled rule” that a District Attorney is presumed to act impartially and therefore has full discretion to decide whom to prosecute. (People v Claudio, 130 AD2d 759 [2d Dept 1987]; People v Fielding, 158 NY 542; People v DiFalco, 44 NY2d 2d 482, 486.) The Court of Appeals has adopted an increasingly stringent standard for disqualification of a District Attorney. While People v Zimmer (51 NY2d 390) and People v Shinkle (supra), decided less than one month apart in 1980, seemed to presage a not-difficult burden for a defendant seeking removal of a District Attorney for an alleged conflict of interest, that interpretation was short-lived.[9]
*671 Three years later, the Court effected a virtual sea change in approach, when it decided Matter of Schumer v Holtzman (supra).[10] The Court offered new, seemingly more restrictive *672 guidance on disqualification of a District Attorney, which remains the law on this issue: "A court may intervene to disqualify an attorney only under limited circumstances. Particularly is this so in the case of a District Attorney who is a constitutional officer chosen by the electorate and whose removal by a court implicates separation of powers considerations * * * The courts, as a general rule, should remove a public prosecutor only to protect a defendant from actual prejudice arising from a demonstrated conflict of interest or a substantial risk of an abuse of confidence (e.g., People v Zimmer, 51 NY2d 390, supra; People v Shinkle, 51 NY2d 417, 421) and the appearance of impropriety, standing alone, might not be grounds for disqualification. The objector should demonstrate actual prejudice or so substantial a risk thereof as could not be ignored.” (Supra, at 55.)[11]
It is thus helpful to examine the facts at bar in terms of each of the grounds for disqualification recognized in Matter of Schumer v Holtzman (supra). Turning to the first such ground, there can be no "actual prejudice arising from a demonstrated conflict of interest” here for two reasons: there is neither a conflict of interest by the Kings County District Attorney nor actionable actual prejudice suffered by defendant.
Although defendant does not explicitly plead a conflict of interest by the Kings County District Attorney, he appears to suggest that one exists and that it is rooted in two forms of inappropriate motivation by that prosecutor: retribution for defendant’s acquittal and the criticism resulting therefrom, and personal political gain. Taken to its logical extension, defendant’s argument could be restated thus: The Kings County District Attorney, stung by adverse comment by the Girgenti Report and others of the handling of defendant’s murder trial, allied himself with those who most vocally decried the acquittal, actively and successfully lobbied Attorney General Reno for initiation of the process which resulted in defendant’s pending Federal prosecution, and now denies defendant the benefit of a lower plea offer in the instant unrelated misdemeanor prosecution.
There is no evidence before this court which would warrant the finding that the Kings County District Attorney has proceeded in bad faith. Assuming, arguendo, however, both the *673 truth of the facts asserted by defendant and the negative connotation which defendant places thereon, there would nonetheless be no conflict of interest. The Court of Appeals has made plain that a conflict of interest will not be lightly declared, and that "the appearance of impropriety, standing alone, might not be grounds for disqualification. The objector should demonstrate actual prejudice or so substantial a risk thereof as could not be ignored.” (Matter of Schumer v Holtzman, supra, at 55.) Thus, for example, even a previous attorney-client relationship bétween a defendant and a prosecutor is insufficient to warrant disqualification of a District Attorney without a showing of prejudice by the defendant (People v English, 215 AD2d 774 [2d Dept 1995] [defendant’s former attorney later joined staff of the District Attorney, and remained in that position at time of prosecution at issue]; People v Vanderpool, 217 AD2d 716 [3d Dept 1995] [prosecuting attorney had personally represented defendant in a criminal case 10 years earlier and had also represented members of the defendant’s family on prior occasions]; People v Early, 173 AD2d 884 [3d Dept 1991] [disqualification not required even though defendant’s prior attorney had been appointed an Assistant District Attorney during the pendency of the criminal proceeding at issue]; People v George, 137 AD2d 876 [3d Dept 1988] [not error to deny disqualification despite fact that prosecuting attorney had represented defendant in unrelated matter eight years earlier]; People v Lifrieri, NYLJ, Apr. 27, 1993, at 32, col 3 [Sup Ct, Kings County] [disqualification not required where defendant’s former attorney on civil matters became an Assistant District Attorney 15 months after his connection with defendant ended and left that office four months before defendant’s arrest and prosecution]).[12]
When the Kings County District Attorney, through his Assistants, prosecuted defendant for murder, he did so on behalf of the People of the State of New York. In that case, as in virtually every criminal prosecution, some persons or groups of persons were more interested in a successful prosecution than *674 was the general public at large. A District Attorney in such situations represents those interested people as well, and may, in fact, be closely allied with them during that prosecution. Such alliances between the family and friends of a crime victim and the prosecution staff are neither uncommon nor improper. In the usual case, the alliance abates after the prosecution ends. Where the verdict is an acquittal, disappointment or anger may result, but closure of the matter regularly follows.
In some other situations, however, active interest in the case does not terminate with an acquittal. Indeed, in defendant’s matter, his 1992 acquittal was met by a large public outcry by many, to include the United States Congress as well as the Kings County District Attorney.[13] That reaction, sustained over many months, caused the Justice Department to investigate the Rosenbaum death, with the ensuing filing of Federal charges. That the Kings County District Attorney here proceeded in the fashion that he did, by calling for Justice Department intervention and by filing legal papers with the Attorney General in support of his petition may be unusual. Such action does not, however, invite responsible description as a conflict of interest. Nor does it warrant the drastic step of judicial removal of the elected prosecutor.
Defendant also appears to roundly suggest that the Kings County District Attorney was prompted to proceed as he did by personal political considerations. There is no evidence in this record which would support that contention. The fact that the Kings County District Attorney sought nomination for the Office of Attorney-General of the State of New York in 1994 is irrelevant to his prosecution of defendant for the instant crimes, particularly since they were allegedly committed on June 23, 1995, approximately nine months after that quest ended. Nor has defendant tendered any nexus between that candidacy and this case.[14] Similarly, this record is bereft of reliable indication that either the instigation or handling of this prosecution stems from any retributive conduct by the Kings County District Attorney.
*675 Although this court finds no conflict of interest by the Kings County District Attorney, there is more to be said with regard to this first disqualification ground. As noted above, a defendant claiming a conflict of interest must demonstrate actual prejudice flowing therefrom. The sole prejudice here asserted is that the Kings County District Attorney has denied defendant the opportunity to plead guilty to a lower degree of crime. While a defendant may, as a matter of right, plead guilty to an entire accusatory instrument (CPL 220.10 [2]), there is no corresponding right to plead to a reduced charge (People v Memminger, 121 Misc 2d 953 [Sup Ct, Kings County 1983]). While plea agreements to lesser charges daily abound in this and other criminal courts, the law is clear that a District Attorney has the discretion to offer or deny such arrangements to a defendant (CPL 220.10 [3]).
Nor is there evidence which would satisfy the second ground for disqualification under Matter of Schumer v Holtzman (supra): a substantial risk of an abuse of confidence. To be sure, a prosecutor would be well advised to step away from a case in which his or her impartiality could reasonably be questioned, such as where the complainant is the prosecuting attorney (People v Krstovich, 72 Misc 2d 90 [Greene County Ct 1972] [premises allegedly damaged by criminal mischief were owned by the District Attorney and housed his private law practice office]), or where the accused is related to the District Attorney (People v Ramirez, NYLJ, Mar. 2, 1994, at 23, col 3 [Crim Ct, Bronx County]), or is a member of the District Attorney’s legal staff (People v Schrager, 74 Misc 2d 833 [Sup Ct, Queens County 1973]). Courts have, however, been commonly reluctant to override a prosecutor’s judgment of self-fitness to proceed. (Matter of Morgenthau v Crane, supra.) Indeed, only in rare circumstances has disqualification been required (People v Gallagher, 143 AD2d 929 [2d Dept 1988]).
Contrastingly, the circumstances attending this prosecution cited by defendant do not bespeak a forfeiture of objectivity by the Kings County District Attorney. Nor do they reasonably appear to undermine public confidence in the evenhandedness of the criminal justice process. Standing alone, the fact that this case involves a defendant who was tried to acquittal in a controversial, unrelated matter three years ago in this county should not require a different assessment.
*676 CONCLUSION
For the foregoing reasons, defendant’s motion for an order appointing a Special District Attorney is denied.

. Girgenti A Report To The Governor On the Disturbances In Crown Heights (Director of Criminal Justice, State of New York [Girgenti Report]).

. On October 17,1995, the United States Court of Appeals for the Second Circuit vacated an order of the District Court which denied the Government’s motion to transfer defendant for adult prosecution, and remanded the matter to the District Court for further findings and reconsideration (United States v Nelson, 68 F3d 583 [2d Cir 1995]).

. Reply affidavit of Trevor L. F. Headley, Esq., counsel for defendant, at 2-3, para 13.

. Id,., at 3, para 10.

. Id., at 3, para 12.

. The People rely on the following authorities: People v Keeton (supra); Matter of Schumer v Holtzman (60 NY2d 46 [1983]); People v Shinkle (51 *669 NY2d 417 [1980]); Matter of Hynes v Demarest (202 AD2d 669 [2d Dept 1994]); Matter of Holtzman v Hellenbrand (130 AD2d 749 [2d Dept 1987]).

. County Law § 701 (Special District Attorney) reads in pertinent part as follows:
"1. Whenever the district attorney of any county and such assistants as he or she may have shall not be in attendance at a term of any court of record, which he or she is by law required to attend, or are disqualified from acting in a particular case to discharge his or her duties at a term of any court, a superior criminal court in the county wherein the action is triable may, by order:
"(a) appoint some attorney at law having an office in or residing in the county, or in any adjoining county, to act as special district attorney during the absence, inability or disqualification of the district attorney and such assistants as he or she may have; or
"(b) appoint a district attorney of any other county within the judicial department or of any county adjoining the county wherein the action is triable to act as special district attorney, provided such district attorney agrees to accept appointment by such criminal court during such absence, inability or disqualification of the district attorney and such assistants as he or she may have.”

. This court does not concur with the People’s contention that Matter of Morgenthau v Crane (113 AD2d 20 [1st Dept 1985]) stands for the proposition that a local criminal court should not entertain a disqualification motion such as the one at bar. Unhurried review of that decision locates neither a statement nor suggestion of such a rule. While the Appellate Division did say, in dicta, that the Criminal Court properly found that County Law § 701 "vests the authority to appoint a Special Prosecutor exclusively in a superior court”, it also noted, without disapproval, that such court had addressed "the facts and merits of the application in a thoughtful opinion which led it to conclude, albeit dicta, that denial would also be warranted on the merits” (supra, at 21).

. In Zimmer (supra), the District Attorney who prosecuted defendant was, at the time he presented the case to the Grand Jury, also counsel to and a stockholder of the corporation in the course of whose management defendant allegedly committed the crimes with which he was charged. Defendant contended that the prosecutor’s involvement with the corporation disqualified him from representing the People. The Court of Appeals agreed, holding that "the practical impossibility of establishing” that a conflict of interest has worked to a defendant’s disadvantage "dictates the adoption of standards *671 under which a reasonable potential for prejudice will suffice”. (People v Zimmer, supra, at 395.) Thus, the Court ruled that the District Attorney should have avoided the harm of "identification, in appearance as well as in fact, with more than one side of the controversy”, reversed defendant’s conviction and dismissed the indictment (supra, at 396).
In Shinkle (51 NY2d 417, supra), the Court went further and etched a seeming per se disqualification standard to apply in the unusual situation in which a member of defendant’s legal team joins the office of the prosecuting agency during the pendency of the same case. There, the executive director of the Legal Aid Society became actively involved as an advisor to a staff attorney who was defendant’s assigned counsel. The advisor interviewed defendant extensively, was familiar with the defense file and aided in the formulation of trial strategy. Later, the advisor resigned his position and accepted appointment as Chief Assistant District Attorney in the office prosecuting his former client. Although careful, elaborate steps were taken within the prosecutor’s office to isolate that attorney from involvement in the case of his former client, the Court of Appeals vacated the conviction, adopting a "per se disqualification rule effecting the entire staff of the District Attorney without a showing of prejudice or without requiring that even a question as to the integrity of the office of the District Attorney be raised” (supra, at 421-422 [dissenting opn]). The Court explained its rationale for so ruling thus: "The fact that the attorney who had initially represented defendant and participated actively in the preparation of his defense was chief assistant in the office of the prosecutor in the months preceding and during defendant’s trial inescapably gave both defendant and the public the unmistakable appearance of impropriety and created the continuing opportunity for abuse of confidences entrusted to the attorney during the months of his active representation of defendant. It is no answer that defendant offers no evidentiary proof of actual prejudice. In the circumstances such proof would most likely be out of defendant’s reach. Nor does it serve to protect the interests of defendant that procedures were devised and scrupulously followed to insulate [the attorney] from the prosecution of this case. The inherent impropriety of the situation is further demonstrated in this instance when, in any attempt to show that the insulation was practically effective, the People circuitously resorted to an affirmation from [the attorney] himself. In defendant’s perception, it was his former attorney who was personally championing the People’s cause against him.” (Supra, at 420-421.)

. In Matter of Schumer v Holtzman (supra), the then-Kings County District Attorney unsuccessfully asked the then-Governor of New York State to appoint a Special Prosecutor to supersede her under the Executive Law in an investigation of campaign activity by her successor in a Brooklyn congressional seat. She then appointed a Special Assistant District Attorney from outside her office to conduct the investigation and prosecution, pursuant to a written memorandum of understanding. The subject of the investigation brought a CPLR article 78 proceeding challenging the appointment and requesting an order directing its rescission and prohibiting the Special Assistant District Attorney from undertaking his duties. The Court of Appeals held that the appointment of the Special Assistant District Attorney was invalid, and that it was error for the lower courts to consider and determine *672 the disqualification issue, since in view of the then-state of the record, "There is not yet any basis for deciding whether the present situation meets these [disqualification] criteria and calls for judicial action.” (Supra, at 55.)

. See also, People v Keeton, supra.

. Disqualification was also denied where there was a claimed conflict of interest because the law firm of the District Attorney’s husband represented clients who were opposed to defendant’s interests (People v Bombard, 203 AD2d 711 [3d Dept 1994]); where the arresting officer later became an Assistant District Attorney in the same office at the time he testified against defendant in the same case (People v Freeman, 172 AD2d 1045 [4th Dept 1991]); and where the Medical Examiner who testified at the trial was the father of the prosecuting attorney (People v McCullough, 141 AD2d 856 [2d Dept 1988]).

. On September 29,1993, the United States Senate unanimously passed, by a 97-to-0 vote, a resolution urging the Justice Department to undertake a civil rights investigation into the killing of Mr. Rosenbaum. (Kraus, Senate Urges Federal Inquiry on Crown Heights, NY Times, Sept. 30, 1993, section B, at 5, col 1.)

. This court rejects any implication, should defendant be making one, that an adverse inference should be drawn solely from the fact that a prosecutor seeks election to another public office. In this regard, it is parenthetically noteworthy that the late Frank S. Hogan, whose 32-year tenure as District Attorney of New York County was nationally acclaimed for its integrity, *675 fairness and nonpolitical nature, unsuccessfully sought election to the United States Senate while in office.