**Kevin HARFORD, Plaintiff,**

v.

**COUNTY OF BROOME, Broome County Sheriff's Department, Geno DeAngelo, as Sheriff and Individually, David E. Harder, as Sheriff and Individually, Lawrence Fischer, as Broome County Jail Administrator and Individually, Sergeant Donald Chillari, as Broome County Deputy Sheriff and Individually, Village of Port Dickinson, Village of Port Dick-**

---

inson Police Department, Sergeant Michael Cashman, as Sergeant and Acting Chief of the Village of Port Dickinson Police Department and Individually, and Officer Daniel Dirienzo, as Police Officer in the Village of Port Dickinson Police Department and Individually, Defendants.

No. 99–CV–0482.

United States District Court,
N.D. New York.

June 5, 2000.

Ball, McDonough Law Firm, Binghamton, NY, for plaintiff, Kevin F. McDonough, of counsel.

Broome County Attorney's Office, Edwin L. Crawford County Office Bldg., Binghamton, NY, for defendants County of Broome, Broome County Sheriff's Department, Geno DeAngelo, David Harder, Lawrence Fischer, and Donald Chillari, Robert G. Behnke, William L. Gibson, of counsel.

Petrone & Petrone, P.C., Utica, NY, for defendants Village of Port Dickinson, Village of Port Dickinson Police Department, Sergeant Michael Cashman, and Officer Daniel Dirienzo, David A. Bagley, of counsel.

## MEMORANDUM—DECISION & ORDER

McAVOY, District Judge.

Plaintiff Kevin Harford commenced the instant litigation against defendants asserting claims pursuant to 42 U.S.C. § 1983 for alleged violations of his constitutional rights under the First, Fourth and Fourteenth Amendments, and common law claims for false arrest, malicious prosecution, negligence, the intentional infliction of emotional distress, and the intentional interference with contract. This matter was the subject of the Court's prior Memorandum—Decision & Order ("MDO") dated July 15, 1999, *see Harford v. County of Broome*, 1999 WL 615190 (N.D.N.Y.1999) (*"Harford I"*), familiarity with which is assumed.[1] Presently before the Court are motions by Defendants County of Broome, Broome County Sheriff's Department, Geno DeAngelo, David Harder, Lawrence Fischer, and Donald Chillari (the "County Defendants") and Defendants Village of Port Dickinson, Village of Port Dickinson Police Department, Michael Cashman, and Daniel DiRienzo (the "Village Defen-

---

1. A related matter involving the confirmation of an arbitration award was the subject of a Memorandum—Decision & Order from this Court, *see County of Broome v. Harford*, 1999 WL 615193 (N.D.N.Y.1999) (*Harford II*), familiarity with which is also assumed.

dants") pursuant to FED.R.CIV.P. 56 seeking dismissal of the Amended Complaint (the "Complaint") in its entirety.

## I. BACKGROUND

Because this matter is before the Court on Defendants' motions for summary judgment, the following facts are presented in the light most favorable to Plaintiff. See Ertman v. United States, 165 F.3d 204, 206 (2d Cir.1999).

Plaintiff was employed in a competitive class position as a corrections officer for Broome County (the "County"). During that time, Plaintiff dated Theresa Cleary ("Cleary"), another corrections officer, for approximately six years, until March 30, 1998. Plaintiff lived with Cleary until August 1994. There is a dispute whether Plaintiff retained a key to Cleary's residence. For the purposes of this instant motions, and looking at the evidence in the light most favorable to Plaintiff, the Court will assume that he did have a key.

On March 30, 1998, Plaintiff was at his residence with Lisa Normile ("Normile"), a woman he was dating at that time. Normile used Plaintiff's telephone to leave bothersome messages on Cleary's answering machine. According to Cleary, the messages were "obscene, abusive, and degrading." See Mar. 20, 2000 DiRienzo Aff., Ex. 2. Plaintiff also left a message wherein he stated that he was interested in dating Normile and that Cleary should not contact him anymore.

At approximately 3:15 p.m., Plaintiff went to Cleary's home to erase the messages he and Normile left on the answering machine. Using a key, Plaintiff entered Cleary's home. Plaintiff removed the tape from Cleary's answering machine and was then confronted by Clearly's son, Patrick, who was home unexpectedly. See Oct. 9, 1998 Harford Aff. at ¶ 9. Plaintiff advised Patrick that he had to erase the tape. Patrick informed Plaintiff that his mother had already heard the messages. Plaintiff then returned the tape to the answering machine, looked for a uniform

that Cleary was purportedly washing for him, and left. See id.

A short while thereafter, Patrick observed Plaintiff looking around on Cleary's porch. Plaintiff alleges he returned to retrieve his sunglasses that he had left on the porch. Patrick apparently thought Plaintiff was looking for the spare key that was hidden in or around the porch.

Cleary returned to her residence, dialed 9–1–1 and reported that her "house was just broken into." Mar. 22, 2000 Behnke Aff., Ex. O. Cleary stated to the 9–1–1 operator that "[t]hey were trying to get messages, incriminating messages that they had left on my answering machine and they didn't realize my son was home. And my son walked down the stairs and they tried to take some things out of the house and then they left." Id. Cleary then identified the suspect as the Plaintiff herein. Cleary requested that the 9–1–1 operator send someone from the Broome County Sheriff's Office ("BCSO"). The 9–1–1 operator responded that she had to send someone from the Village of Port Dickinson Police Department ("VPDPD"), which had primary jurisdiction over the area in which Cleary resided. The 9–1–1 operator contacted the VPDPD and stated that "I need you to respond to 7 Newton Street ... for a possible attempted burglary complaint." McDonough Aff., Ex. 24, p. 5.

Defendant Sergeant Chillari ("Chillari") of the BCSO was apprised of the matter and telephoned Cleary. Cleary requested that Chillari come to her home, which he agreed to do after first finishing up some other matters.

Defendant Police Officer Daniel DiRienzo ("DiRienzo") of the VPDPD responded first to Cleary's home. Cleary told DiRienzo that Plaintiff had broken into her home. Shortly thereafter, Chillari responded to the scene. Defendant Sergeant Michael Cashman ("Cashman") of the VPDPD was the last to respond to Cleary's home. During the course of the investigation, the officers talked with Pat-

rick and Theresa Cleary. DiRienzo apprised Cashman of the information he obtained. Cashman then conferred with Cleary who apparently indicated that Harford, a fellow corrections officer with whom she had had a prior romantic relationship, entered her home to take or erase the answering machine tape. Patrick allegedly told Cashman that Plaintiff used a key. Cleary purportedly stated that Plaintiff must have used the spare key that was hidden on the front porch.

While the officers were there, Cleary's telephone rang on approximately three separate occasions. Utilizing her caller identification equipment, Cleary identified Plaintiff as the caller. On the third occasion, Chillari instructed Cleary to answer the phone while he listened in on another extension. During the telephone conversation, Cleary asked Plaintiff why he had broken into her home. Plaintiff responded that he intended to erase [2] the answering machine tape so she would not hear them. The two then discussed how Plaintiff entered the residence, with Cleary accusing Plaintiff of breaking into her home. *See* Oct. 9, 1998 Harford Aff., ¶ 10. Plaintiff allegedly stated that he had a key, to which Cleary is purported to have responded that he did not.

Defendants contend that Cleary told them that Plaintiff was not given a key, but that he must have obtained the key from the hiding spot on the porch. Defendants also represent that Cleary told them that she and Plaintiff had an agreement whereby they would not enter one another's residence without the owner being present. Plaintiff, on the other hand, contends that Cleary had given him a key. Plaintiff also insists that, after the telephone conversation between Cleary and Plaintiff, she recalled having given a key to Plaintiff, a fact she related to Chillari. Chillari is then purported to have told Cleary that "[w]ell as far as you're concerned he doesn't have a key—right, Terry." McDonough Aff., Ex. 21, ¶ 7.

After Chillari and Cashman left the scene, DiRienzo took statements from Patrick and Theresa Cleary. *See* Behnke Aff., Ex. P. In his statement, Patrick recounted the facts detailed above that Plaintiff and Normile left several messages on Cleary's answer machine, Plaintiff later entered the Cleary residence to erase or obtain a copy of the answering machine tape, and that, after leaving the residence, Plaintiff returned to the residence and was spotted looking around the porch. Cleary gave a statement that she listened to two "obscene and abusive and degrading" messages on her answering machine from Lisa Normile, and a third message from Plaintiff stating that she should not call him anymore. Plaintiff's statement also reiterated the information provided by Patrick Cleary.

Cashman referenced the New York State Penal Law and conferred with Assistant District Attorney Joseph Romani ("Romani") who agreed that Plaintiff should be charged with Burglary in the Second Degree in violation of N.Y. PENAL LAW. § 140.25. Cashman then proceeded to the BCSO and met with Defendant Jail Administrator Lawrence Fischer ("Fischer") and Chillari to discuss the matter. Plaintiff alleges that the three discussed that disciplinary actions would automatically be taken against Plaintiff if he was charged with a felony and that, without such a criminal charge, the Sheriff's Department would have to review the totality of the circumstances before determining whether disciplinary charges would be instituted.

Thereafter, Cashman contacted Plaintiff and asked him to come to the VPDPD, which he did. While talking with Cashman and DiRienzo, Plaintiff explained that he had a key to Cleary's residence and produced the key to Cashman. Plaintiff signed a statement wherein he stated that he "did enter Theresa Cleary's residence with the intention of erasing a few mes-

---

**2.** There is a factual dispute whether Plaintiff    intended to take and/or erase the tape.

sages off her answering machine that was [sic] left previously by myself and another person (Lisa)." Behnke Aff., Ex. X.

Fischer and Chillari also came to the VPDPD. Fischer relieved Plaintiff of his BCSO credentials. Cashman told Plaintiff he was being charged with Burglary in the Second Degree and prepared a felony complaint supporting the charge. The charge read, in pertinent part, as follows:

That on or about 3:15 pm on 3/30/98, in the Village of Port Dickinson, Broome County, New York, the said defendant, did enter a dwelling at 7 Newton Street in the Village of Port Dickinson with the intent to destroy evidence of an aggravated harassment.

Fischer was concerned that Harford, a Broome County Corrections Officer, would be remanded to the Broome County Jail following arraignment (thereby being imprisoned with the very inmates over whom he previously had responsibility to oversee) and, thus, spoke to Romani regarding the possibility of having Plaintiff released on his own recognizance. Romani agreed, provided Cleary obtained an order of protection and Plaintiff surrendered his firearms.

Plaintiff was arrested, arraigned, and released on his own recognizance. The court issued a protective order for Cleary. Chillari delivered a copy of the protective order to Cleary and also returned to her the key to her residence produced by Plaintiff. DiRienzo retrieved Plaintiff's firearms.

The next day, DiRienzo arrested Normile on a charge of aggravated harassment arising out of the messages left on Cleary's answering machine.

On April 3, 1998, Defendant Sheriff Geno DeAngelo ("DeAngelo") commenced disciplinary proceedings against Plaintiff on account of his being "charged with the felony—level crime of Burglary in the Second Degree as evidenced by a felony complaint having been filed with the Town of Dickinson Town Court by members of the Port Dickinson Police Department." McDonough Aff., Ex. 16 (the "first disciplinary proceeding"). The disciplinary charge further stated that "[t]he aforementioned charges and conduct are in violation of Section 3.25 of the Rules and Regulations of the [BCSO]." Id. ("Section 3.25").

On July 21, 1998, New York State Trooper J.A. VanAuken filed an Information accusing Plaintiff of violating N.Y. PENAL LAW § 240.30, Aggravated Harassment in the Second Degree. The Information alleged that Plaintiff "did telephone Lisa D. Normile, three times for no legitimate reasons. The [Plaintiff] did so even after being hung up on twice and being told not to call her residence. Context of the calls were annoying and threatening in nature." MacDonough Aff., Ex. 18. The Information was supplemented by the supporting deposition of Normile. Upon review of the Information, on August 31, 1998, Union Town Justice Richard H. Miller, II issued a warrant for Plaintiff's arrest.

The Town of Dickinson Justice Court denied Plaintiff's motion to dismiss the burglary charge. On September 15, 1998, Plaintiff agreed to an adjournment in contemplation of dismissal ("ACOD") for a criminal trespass charge in satisfaction of the burglary charge. In or about November 1998, the Town of Dickinson Town Court denied Plaintiff's request to rescind the ACOD and have his case restored to the criminal calendar.

On or about December 13, 1999, Plaintiff was arrested on the aggravated harassment charge and arraigned in the Town of Union court. The BCSO became aware of this latter arraignment because one of its transport officers was in Town Court that same morning and observed Plaintiff's arraignment.

The disciplinary charges against Plaintiff proceeded to arbitration, after which, by decision dated March 15, 1999, Plaintiff was suspended for sixty days.

On March 30, 1999, Plaintiff commenced the instant litigation alleging violations of his Fourth, and Fourteenth Amendment rights, and asserting various state law causes of action. The County then commenced an action in state court to confirm the arbitrator's award. Plaintiff removed the action to this Court claiming that the County's petition to confirm presented constitutional issues. *See Harford II.* The County moved to remand the matter on the grounds that there was no federal question involved. *See id.* This Court agreed with the County and remanded the matter to state court, *see id.,* which confirmed the arbitrator's award. *See* Behnke Aff., Ex. U.

On May 3, 1999, shortly after Plaintiff returned to work from his sixty day suspension, the BCSO brought disciplinary charges (the "second disciplinary proceedings") against him alleging: (1) misconduct in violation of section 3.25 of the Rules and Regulations of the BCSO, in that Plaintiff was arrested and charged with aggravated harassment in the second degree; and (2) misconduct in violation of section 3.26 of the Rules and Regulations of the BCSO, which requires officers to "immediately report to their superiors any arrest or court action instituted against them."

Plaintiff moved this Court, by Order to Show Cause, for a temporary restraining order or, in the alternative, a preliminary injunction, enjoining Defendants from disciplining him and reinstating him to his position. That motion was denied by this Court. Plaintiff then moved for a preliminary injunction seeking the same relief. By MDO dated July 13, 1999, this Court denied Plaintiff's motion for injunctive relief. *See Harford I.* Defendants BSCO, Fischer, Chillari, DeAngelo, and Harder cross-moved to dismiss pursuant to FED. R.CIV.P. 12(b)(2) and (6). The Court dismissed the official capacity claims against DeAngelo, Harder, Fischer and Chillari and dismissed the Complaint in its entirety against the BCSO.

After a hearing on the second disciplinary charges, by decision dated November 5, 1999, the arbitrator found that Plaintiff did not commit any material misconduct of Section 3.25, but that he had a period of nearly five months to comply with Section 3.26 and failed to do so. The arbitrator concluded that Plaintiff violated Rule 3.26 and that "the County does have adequate grounds for the termination of Kevin Harford and recommends that penalty be imposed by the Broome County Sheriff in this matter." Behnke Aff., Ex. W. Thereafter, Sheriff Harder sent a letter to Plaintiff terminating his employment with the County.

Plaintiff then amended his Complaint to assert a claim of retaliation. Presently before the Court are Defendants' motions for summary judgment pursuant to FED. R.CIV.P. 56 seeking dismissal of the Complaint in its entirety.

## II. DISCUSSION

### A. Standard of Review

This Court has set forth the applicable standard for summary judgment in numerous reported decisions, *see, e.g., Hoffman v. County of Delaware,* 41 F.Supp.2d 195 (N.D.N.Y.1999), *aff'd,* 205 F.3d 1323, 2000 WL 232757 (2d Cir.2000), and need not restate it here. The Court will apply the standards set out in those decisions to the pending motions.

### B. Fourth Amendment and False Arrest Claims

In his First Cause of Action, Plaintiff alleges that Defendants conspired to violate his Fourth Amendment right to be free from unreasonable search and seizure in that he was arrested without a warrant and without probable cause. The Village Defendants move to dismiss this Cause of Action claiming that they acted with probable cause or, in the alternative, that the conduct of the individual Village Defendants is protected by qualified immunity. The County Defendants move to dismiss

this claim on the grounds that they were not personally involved in Plaintiff's arrest and, in the alternative, that the arrest was effectuated with probable cause.

Without question, Plaintiff has a constitutional right to be free from arrest absent probable cause. *See Martinez v. Simonetti,* 202 F.3d 625, 633 (2d Cir.2000); *Smith v. Edwards,* 175 F.3d 99, 105 (2d Cir.1999). The corollary to this rule is that section 1983 claims and common law claims for false arrest must fail if the police officers had probable cause to arrest. *See Singer v. Fulton County Sheriff,* 63 F.3d 110, 118 (2d Cir.1995), *cert. denied,* 517 U.S. 1189, 116 S.Ct. 1676, 134 L.Ed.2d 779 (1996); *Barr v. Abrams,* 810 F.2d 358, 362 (2d Cir.1987); *Gisondi v. Town of Harrison,* 72 N.Y.2d 280, 283, 532 N.Y.S.2d 234, 528 N.E.2d 157 (1988); *Martinez v. Wegmans Food Markets, Inc.,* 705 N.Y.S.2d 545 (4th Dep't 2000).

"Lawful arrest, i.e., arrest pursuant to probable cause, requires the arresting officer to have 'knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested.'" *Martinez,* 202 F.3d at 634 (quoting *Singer,* 63 F.3d 110, 119 (2d Cir.1995)). "The existence of probable cause must be determined on the basis of the totality of the circumstances." *See Calamia v. City of New York,* 879 F.2d 1025, 1032 (2d Cir.1989); *see also Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 2328–29, 76 L.Ed.2d 527 (1983). "Moreover, 'it is well-established that a law enforcement official has probable cause to arrest if he received his information from some person, normally the putative victim or eyewitness.'" *Martinez,* 202 F.3d at 634 (quoting *Miloslavsky v. AES Eng'g Soc'y,* 808 F.Supp. 351, 355 (S.D.N.Y.1992), *aff'd,* 993 F.2d 1534 (2d Cir.), *cert. denied,* 510 U.S. 817, 114 S.Ct. 68, 126 L.Ed.2d 37 (1993)). Of course, to prevail on a question of probable cause, Defendants need not prove that Plaintiff actually committed the crime at issue, but only demonstrate

that they possessed sufficient facts to establish probable cause. *See Krause v. Bennett,* 887 F.2d 362, 372 (2d Cir.1989).

Here, Cashman charged Plaintiff with Burglary in the Second Degree in violation of N.Y.PENAL LAW § 140.25. Section 140.25 provides that:

A person is guilty of burglary in the second degree when he knowingly enters or remains unlawfully in a building with intent to commit a crime therein, and when ... the building is a dwelling.

The Felony Complaint prepared by Cashman provides that Plaintiff "did enter a dwelling at 7 Newton Street ... with the intent to destroy evidence of an aggravated harassment." *See* Cashman Aff., Ex. 3.

Plaintiff does not argue that he did not intend to commit a crime in Cleary's home. During the course of the investigation, Plaintiff admitted in a sworn statement that he entered Cleary's residence with the intention of erasing the tape. *See* Cashman Aff., Ex. 2. Thus, the sole issue here is whether the arresting officers had probable cause to believe that Plaintiff was not privileged to be in Cleary's home. *See* N.Y.PENAL LAW § 140.00(5) ("A person 'enters or remains unlawfully' in or upon premises when he is not licensed or privileged to do so."); *People v. Graves,* 76 N.Y.2d 16, 20, 556 N.Y.S.2d 16, 555 N.E.2d 268 (1990). A person is "licensed or privileged" to enter premises when he has the permission of the owner or someone whose relationship to the premises gives him authority to grant such consent. *See Graves,* 76 N.Y.2d at 20, 556 N.Y.S.2d 16, 555 N.E.2d 268.

■ Whether Plaintiff had permission to be in Cleary's home was previously litigated in connection with the first disciplinary proceeding. The arbitrator found as follows:

While the Grievant excuses his actions, in entering Ms. Cleary's home without her permission, claiming those actions as normal procedure as Ms. Cleary had previously given him a key as her fiancé

to enter the home in emergencies and to pick up wash that she had done for him, the Grievant was no longer Ms. Cleary's fiancé at that point in time.

Prior to entering the home using a key that Ms. Cleary claimed was used only in emergency situations and which had not been used for such a long period of time that Ms. Cleary had forgotten the Grievant had a key, the Grievant had been in the home of another woman who had on that day left messages for Ms. Cleary and the Grievant had personally on one of those messages told Ms. Cleary "I was sorry but that I would be seeing this other woman and that Ms. Cleary should not contact me."

At that point in time it would appear that any engagement, if any existed, was over and any rights that the Grievant felt he had enjoyed, including the use of a key to enter Ms. Cleary's home, as Ms. Cleary's fiancé, were no longer applicable to this situation....

[Grievant] went [to Cleary's home] without permission to commit an illegal act in regard to the removal/erasure of Ms. Cleary's answer machine tape.... Ms. Cleary's son did not give the Grievant permission to be in the home....

While the Grievant may have been of the opinion that his possession of a key to Ms. Cleary's home gave him carte blanche to enter Ms. Cleary's home at will, Ms. Cleary during the hearing testified that the Grievant had never used the key without her knowledge and permission and usually only in emergency situations where her son was locked out. She further testified that he did not have her permission to either enter her home on March 30, 1998 or remove her answer machine tape on that date.

Because the issue of whether Plaintiff was privileged to be in Cleary's home is identical to the issue raised here, this issue was fully litigated at arbitration, and a decision by the arbitrator on that issue was necessary to support a valid, final judgment on the merits, Plaintiff is collaterally estopped from arguing that he was privileged to be in her home on the date in question. *See Migra v. Warren City Sch. Dist. Bd. of Educ.,* 465 U.S. 75, 104 S.Ct. 892, 896, 79 L.Ed.2d 56 (1984); *Ryan v. New York Tel. Co.,* 62 N.Y.2d 494, 478 N.Y.S.2d 823, 467 N.E.2d 487 (1984); *see also Hoffman v. County of Delaware,* 41 F.Supp.2d 195, 207, *aff'd,* 205 F.3d 1323, 2000 WL 232757 (2d Cir.2000); *Doe v. Pfrommer,* 148 F.3d 73, 80 (2d Cir.1998) (holding that the strong public policy of giving preclusive effect to administrative law judge's factual determinations and avoiding relitigation permits district court to raise issue of collateral estoppel and res judicata *sua sponte* ). Of course, the pertinent inquiry here is not whether Plaintiff actually had permission to be in Cleary's residence, but whether the totality of the circumstances as presented to Defendants supported a finding of probable cause to arrest him on a charge of burglary in the second degree.

A review of the facts reveals that Cleary dialed 9–1–1 and told the dispatcher that her home was "broken into ... [by] Kevin Harford." Behnke Aff., Ex. O. The 9–1–1 dispatcher radioed the VPDPD and asked them to respond "to 7 Newton Street for a possible attempted burglary complaint." McDonough Aff., Ex. 24, p. 5. DiRienzo arrived on the scene and was advised by both Patrick and Theresa Cleary that Plaintiff entered the home and attempted to either erase or take the answering machine tape, when his actions were foiled by Patrick. Cleary denied that she had given Plaintiff a key to enter the residence, but stated that he must have used the spare key hidden on the porch. Cleary later told Chillari that she had forgotten that Plaintiff did have a key.

■ Although there is substantial dispute whether Plaintiff was given a key by Cleary (a fact issue the Court assumes to be true), the facts as known to the arresting officers reasonably support a finding that he was not privileged to be there. Plaintiff has pointed to no evidence that Cleary informed the investigating officers

that Plaintiff had permission to be in her home on that particular occasion. *See People v. Dale,* 224 A.D.2d 917, 637 N.Y.S.2d 873 (4th Dep't 1995) (finding privilege where the building owner stated that the alleged perpetrator had keys and ready access to the building, frequently remained in the building, and had permission to be there on the night of the burglary). In light of the circumstances as known to the police officers, the mere fact that Plaintiff had a key does not thereby mean that he was entitled to use it at the time in question. *See People v. Powers,* 138 A.D.2d 806, 525 N.Y.S.2d 727 (3d Dep't 1988); *see also People v. Winchell,* 250 A.D.2d 942, 673 N.Y.S.2d 474 (3d Dep't), *leave denied,* 92 N.Y.2d 931, 680 N.Y.S.2d 473, 703 N.E.2d 285 (1998). There is no evidence that Plaintiff had Cleary's consent to be in her home at the time in question and, in fact, the evidence tends to suggest just the opposite.[3] It would defy credulity to accept Plaintiff's argument that Cleary consented to his being in her home to erase bothersome answering machine messages in light of the totality of the circumstances as known to the officers, including the facts that Cleary called 9–1–1 and reported a burglary, cooperated with the police officers' investigation, and signed a voluntary statement, knowing all the while that the perpetrator was the Plaintiff herein.[4] Based on the totality of the circumstances (including, but not limited to, the substance of the 9–1–1 call, the statements given by Patrick and Theresa Cleary and Plaintiff to Officers DiRienzo and Cashman, the subject matter of the message left by Plaintiff that Cleary should not contact him anymore, *see* DiRienzo Aff., Exs. 1, 2, Cleary's alleged statement to the officers that Cleary and Plaintiff had an agreement whereby they would not enter the other's home uninvited or be in each other's home without the other one being present, *see* Cashman Aff., ¶ 9, and Cleary's alleged statement to Chillari that she forgot that she gave Plaintiff a key for emergency situations), the Court finds that the there was probable cause to believe that Plaintiff committed the crime of Burglary in the Second Degree, and no fair minded jury could reasonably conclude otherwise.

■ The Court rejects Plaintiff's argument that the lack of probable cause is demonstrated by Cashman's alleged intentional omission of material elements of the offense of Burglary in the Second Degree from the Felony Complaint.[5] Whether the Felony Complaint is sufficient on its face is an issue that was argued before, and rejected by, the Town of Dickinson Court.[6] If Plaintiff was dissatisfied with the Town of Dickinson Court's decision, he should have appealed it. Nevertheless, a facially deficient felony complaint does not a *fortiori* mean that the arrest was effectuated without probable cause and, as discussed, the Court finds that Defendants did act with probable cause.

■ Even if DiRienzo and Cashman did not have probable cause, based upon the facts previously discussed and the information available to them at the time of the arrest, a reasonable jury could only conclude that reasonable officers could disagree whether Plaintiff was privileged to

---

3. As previously discussed, the arbitrator conclusively determined that Cleary did not give Plaintiff permission to be in her home and Plaintiff may not now relitigate that issue.

4. These facts tends to suggest that Cleary did not believe Plaintiff to have permission to be in her home.

5. Plaintiff contends that Cashman intentionally omitted the elements of "knowingly entering or remaining unlawfully" from the Felony

Complaint as evidence that he arrested Plaintiff without probable cause.

6. The Court notes that the Felony Complaint likely is facially sufficient considering its allegations together with the statements of Patrick and Theresa Cleary, referenced therein, that "Kevin just broke into the house." *See* N.Y. PENAL LAW § 140.00(4). Such factual allegations provide reasonable cause to believe that Plaintiff committed burglary in the Second Degree. *See id.*

be in her home. *See Martinez,* 202 F.3d at 634–35 ("[I]n the context of a qualified immunity defense to an allegation of false arrest, the defending officer need only show 'arguable' probable cause."); *Posr v. Court Officer Shield No. 207,* 180 F.3d 409, 416 (2d Cir.1999). Because DiRienzo and Cashman reasonably relied on the information provided by the 9–1–1 dispatcher, Patrick Cleary, Theresa Cleary, and Plaintiff himself, their actions are protected by qualified immunity. *See id.*

## C. Malicious Prosecution Claim

■ Plaintiff's malicious prosecution claim must be dismissed because the criminal proceedings were not terminated in his favor; rather, Plaintiff agreed to an ACOD. *See Hollender v. Trump Village Coop., Inc.,* 58 N.Y.2d 420, 425, 461 N.Y.S.2d 765, 448 N.E.2d 432 (1983). Although Plaintiff now contends that he did not understand at the time he agreed to the ACOD that it would preclude a malicious prosecution claim and that, after learning such, he unsuccessfully attempted to restore the matter to the criminal calendar, the facts are that Plaintiff knowingly and voluntarily agreed to the ACOD. Any misinformation provided to Plaintiff was not the fault of Defendants, but his criminal trial counsel.

Accordingly, Plaintiff's Fourth Amendment, false arrest, and malicious prosecution claims must be dismissed.

## D. Substantive Due Process

Plaintiff's Second Cause of Action alleges a denial of his substantive due process rights arising out of his arrest, the filing and prosecution of disciplinary charges against him, and his ultimate discipline and termination. The Village Defendants move to dismiss claiming that Plaintiff cannot maintain a substantive due process claim against it arising out of the arrest because such a claim is properly brought only under the Fourth Amendment. The County Defendants move to dismiss on the ground that they did not act in an arbi-

trary or capricious manner. In his opposition papers, Plaintiff's only response is that "if Plaintiff's contentions are correct, and it is submitted that there is evidence in the record substantiating such contention, the actions of the Defendant were certainly arbitrary and capricious and had no rational relation to proper government purposes." Pl.Mem. of Law, at 30.

■ The Village Defendants correctly note that "[w]here a § 1983 plaintiff alleges a cause of action protected by an explicit textual source of the Constitution, that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing that claim." *Kaluczky v. City of White Plains,* 57 F.3d 202, 211 (2d Cir.1995) (internal quotations and citations omitted); *see also Albright v. Oliver,* 510 U.S. 266, 114 S.Ct. 807, 813, 127 L.Ed.2d 114 (1994). The Village Defendants did not participate in the disciplinary process against Plaintiff and, thus, Plaintiff's substantive due process claim against them must be grounded in the alleged unlawful arrest. Because claims for unlawful arrest are governed by the Fourth Amendment, Plaintiff may not seek relief for this alleged unlawful arrest under the rubric of a denial of his substantive due process rights. *See Tenenbaum v. Williams,* 193 F.3d 581, 599–600 (2d Cir. 1999), *cert. denied,* 120 S.Ct. 1832 (May 1, 2000). Accordingly, the substantive due process claim against the Village Defendants is dismissed.

To succeed on his substantive due process claim against the County Defendants, Plaintiff must demonstrate that the County's actions were arbitrary or capricious. "The touchstone of due process is protection of the individual against arbitrary action of government." *County of Sacramento v. Lewis,* 523 U.S. 833, 118 S.Ct. 1708, 1716, 140 L.Ed.2d 1043 (internal quotation marks and citation omitted). "Substantive due-process rights guard against the government's exercise of power without any reasonable justification in the service of a legitimate governmental

objective. Only the most egregious official conduct can be said to be arbitrary in the constitutional sense and therefore unconstitutional." *Tenenbaum,* 193 F.3d 581, 600 (internal quotation marks and citations omitted).

There is nothing in the record before the Court tending to suggest that the County Defendants acted arbitrarily, capriciously, or without any reasonable justification in the furtherance of a legitimate governmental objective. Similarly, none of the conduct alleged herein is sufficiently egregious such that Plaintiff's substantive due process rights are implicated and no fair-minded jury could reasonably conclude otherwise.

Plaintiff was subjected to two disciplinary proceedings. In each case, Plaintiff was initially suspended for a maximum of thirty days. The first disciplinary proceeding arose out of the burglary charge. The charge in the first disciplinary provided, in part, as follows:

> On March 30, 1998 you were charged with the felony-level crime of Burglary in the Second Degree.... The aforementioned charges and conduct are in violation of Section 3.25.

Section 3.25 provides that:

> Members shall whether on or off duty conduct themselves in a professional manner and be attentive to the public trust and confidence that has been placed in the Office and its members. Conduct which may discredit or be prejudicial to the good order, efficiency or discipline of the Office is prohibited. Violation of any duly constituted law is also prohibited.

■ Based upon the factual circumstances surrounding the disciplinary charge and in light of Section 3.25, it cannot be said that the County Defendant's action were arbitrary or capricious. It was entirely reasonable for the County Defendants to believe that the conduct in which Plaintiff was alleged to have engaged was likely to be detrimental to the trust and confidence of the BCSO in the public's eye and that such conduct would tend to discredit and be prejudicial to the good order, efficiency and discipline of the BCSO. Maintaining the integrity of a law enforcement/corrections agency certainly is a legitimate governmental objective and disciplining officers who reasonably may be jeopardizing that integrity is not arbitrary and capricious, is rationally related to the governmental objective, and is not conscience shocking. *See Gilbert v. Homar,* 520 U.S. 924, 117 S.Ct. 1807, 1813, 138 L.Ed.2d 120 (1997) ("[T]he State has a significant interest in immediately suspending, when felony charges are filed against them, employees who occupy positions of great public trust and high public visibility, such as police officers."); *Smith v. Carey,* 473 F.Supp. 268, 273 (S.D.N.Y. 1979) ("[I]t is reasonable for an agency charged with the management of prisons and prisoners to be able to suspend a corrections officer who has been charged with a crime."); *see also Ibarra v. Martin,* 143 F.3d 286 (7th Cir.1998) (government has a significant interest even where misdemeanor charges are filed against a public employee); *Englblom v. Carey,* 677 F.2d 957, 965 (2d Cir.1982). This conclusion is supported by the arbitrator's determination that disciplinary action against Plaintiff was justified.

The second disciplinary proceeding arose out of a charge of aggravated harassment levied by Normile against Plaintiff. This proceeding charged Plaintiff with violating: (1) Section 3.25 because he "was arrested and charged with aggravated Harassment in the 2nd degree in violation of Section 240.30 Subdivision 1 of the Penal Law of the State of New York;" and (2) violating Section 3.26 [7] which requires officers to "immediately report to

---

7. Section 3.26 provides that:

> Members of the Office shall immediately report to their superiors any arrest or court action instituted against them.

their superiors any arrest or court action instituted against them."

■ For substantially the same reasons discussed above, the County Defendant's actions with respect to the second disciplinary proceeding were not sufficiently arbitrary, capricious, or outrageous so as to violate Plaintiff's substantive due process rights. New York State Trooper VanAuken filed an information charging Plaintiff with Aggravated Harassment in the Second Degree in violation of N.Y.Penal Law § 240.30, which information was supplemented by Normile's supporting deposition. Based on the information and supporting deposition, a Justice of the Union Town Court signed a warrant for Plaintiff's arrest. As will be discussed *infra* the evidence before the Court demonstrates that the County Defendants did not learn of Plaintiff's arrest until he was arraigned in the Union Town Court in December 1998. Plaintiff's arrest and arraignment provided a sufficient basis upon which the County Defendants could reasonably conclude that Plaintiff violated Section 3.25. Moreover, the fact that Plaintiff failed to report his arrest to the BCSO reasonably supported a charge that he violated Section 3.26. Although the misconduct charges were not levied against Plaintiff until several months later and the arbitrator ultimately found that Plaintiff did not commit any material misconduct of Section 3.25, this does not negate the fact that there was a reasonable and justified basis for their issuance. Moreover, the arbitrator did find that Plaintiff violated Section 3.26 and that such violation justified Plaintiff's ultimate termination. Based on these facts, no fair minded jury could reasonably conclude that there was any violation of Plaintiff's substantive due process rights.

Accordingly, Plaintiff's substantive due process claims against the County Defendants are also dismissed.

### E. Procedural Due Process

Plaintiff's Third Cause of Action asserts a denial of his procedural due process rights. The basis for this cause of action is his arrest, prosecution, two suspensions allegedly without prior notice and a hearing, and his ultimate termination. Defendants move to dismiss on the ground that Plaintiff was afforded all process due. Plaintiff does not address these claims in its opposition papers, leading the Court to conclude that he has abandoned them. *See Rizzo–Puccio v. College Auxiliary Servs.*, 71 F.Supp.2d 47, 64 (N.D.N.Y. 1999); *Frink Am. Inc. v. Champion Road Mach. Ltd.*, 48 F.Supp.2d 198, 209 (N.D.N.Y.1999); *Riley v. Town of Bethlehem*, 44 F.Supp.2d 451, 466–67 (N.D.N.Y. 1999); *Lauro v. The City of New York*, 39 F.Supp.2d 351, 366, n. 13 (S.D.N.Y.1999); *Douglas v. Victor Capital Group*, 21 F.Supp.2d 379, 393 (S.D.N.Y.1998) (citing *Singleton v. City of Newburgh*, 1 F.Supp.2d 306, 312 (S.D.N.Y.1998); *National Communications Ass'n, Inc. v. American Tel. & Tel. Co.*, 1998 WL 118174, at *28 (S.D.N.Y. March 16, 1998); *Anti–Monopoly, Inc. v. Hasbro, Inc.*, 958 F.Supp. 895, 907 & n. 11 (S.D.N.Y.), *aff'd*, 130 F.3d 1101 (2d Cir.1997), *cert. denied*, 525 U.S. 813, 119 S.Ct. 48, 142 L.Ed.2d 37 (1998); *Ortho Pharm. Corp. v. Cosprophar, Inc.*, 828 F.Supp. 1114, 1129 (S.D.N.Y. 1993), *aff'd*, 32 F.3d 690 (2d Cir.1994)); *see also Irwin v. City of New York*, 902 F.Supp. 442, 451 (S.D.N.Y.1995). Even assuming these claims not to be abandoned, this Court previously found that Plaintiff had failed to demonstrate a likelihood of success on the merits of his procedural due process claim. *See Harford I*, at *2–*4. Plaintiff has offered nothing new altering this Court's prior conclusion.

Section 75 of the New York Civil Service Law ("Section 75"), the statutory provision under which Plaintiff's disciplinary charges initially proceeded, is constitutional on its face. *See McIntyre v. New York City Dep't of Correction*, 411 F.Supp. 1257, 1260 (S.D.N.Y.1976). The terms of the collec-

tive bargaining agreement between Plaintiff's Union and the County provided that "any employee against whom a disciplinary measure is proposed may elect to follow Section 75 ... or the alternative disciplinary appeals procedure set forth [in the CBA]." Behnke Aff., Ex. R, p. 9. It appears from the facts of this case that, with respect to the first disciplinary proceeding, Plaintiff chose to proceed under the alternative disciplinary procedure set forth in the CBA and, thus, waived his rights under Section 75. With respect to the second disciplinary proceeding, Plaintiff availed himself of the procedures set forth in Section 75.

■ First, Plaintiff was afforded prior notice in both disciplinary proceedings. *See* McDonough Exs. 16, 20. Second, for the reasons discussed in *Harford I*, Plaintiff was not entitled to a pre-suspension hearing in connection with either of his disciplinary proceedings. *See Szoke v. Carter,* 165 F.R.D. 34, 37 (S.D.N.Y.1996); *McIntyre,* 411 F.Supp. 1257. Third, the undisputed facts are that Plaintiff requested and was afforded arbitration pursuant to the terms of his collective bargaining agreement, in the case of the first disciplinary proceeding, and pursuant to Section 75 with respect to the second disciplinary proceeding. Those arbitration proceedings provided Plaintiff was an adequate opportunity to be heard on both the issues of his suspensions and his termination. Thus, Plaintiff was provided with all process that was due and this claim also must be dismissed.

### F.  Equal Protection

Plaintiff's Third Cause of Action also alleges a denial of the equal protection of the laws. Defendants move to dismiss on the grounds that Plaintiff has failed to demonstrate any selective treatment on account of his being in a protected class or

any malicious or bad faith intent to injure him.

Plaintiff has failed to point to any evidence demonstrating a triable issue of fact with respect to this claim. There is no evidence that Plaintiff is a member of a protected class or that he has otherwise been treated differently than others who are similarly situated. To the contrary, deposition testimony submitted by the County Defendants demonstrates that the County has disciplined other employees in the past for being charged with a crime. *See* Behnke Aff., Ex. O, pp. 55–57.

Furthermore, there is no evidence tending to suggest that Defendants acted maliciously or in bad faith with the intent to injure him. The only "evidence" of malice or a bad faith intent to injure comes from Plaintiff's own conjecture and hypothesis and is an insufficient basis upon which to withstand summary judgment. *See Kulak v. City of New York,* 88 F.3d 63, 70 (2d Cir.1996) ("Though we must accept as true the allegations of the party defending against the summary judgment motion, drawing all reasonable inferences in his favor, conclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment.") (internal citation omitted).

### G.  Retaliation

Plaintiff's Fourth Cause of Action alleges that Defendants instituted the May 1999 disciplinary proceedings in retaliation for his having filed a Notice of Claim and/or commenced the instant litigation against them. According to Plaintiff, this is evidenced by the fact that: (1) the criminal matter was held up until shortly after he filed his Notice of Claim against Defendants[8]; (2) the circumstances giving rise to the second disciplinary proceeding were allegedly known by Defendants in July 1998, and by December 1998 at the latest, but the formal charges were not levied

---

8.  The warrant for Plaintiff's arrest was issued in August 1998, but not executed until December 1998. The Notice of Claim apparent-

ly was received by Defendants on December 7, 1998.

against him until May 1999; and (3) the second disciplinary proceeding was commenced approximately one month after the original Complaint in this action was filed.

Defendants respond that the filing of the instant lawsuit was not a motivating factor in the decision to initiate disciplinary proceedings against Plaintiff, that the disciplinary proceedings would have been initiated regardless of the commencement of this litigation because Plaintiff was charged with a crime and failed to report his arrest to the BCSO, and that the disciplinary proceedings were delayed pending: (1) the conclusion of the first disciplinary proceeding; and (2) due to the change in the administration of the Sheriff's Department on January 1, 1999.

> The Second Circuit has instructed that: In a claim for retaliation for the exercise of a constitutional right, the plaintiff "bears the burden of showing that the conduct at issue was constitutionally protected and that the protected conduct was a substantial or motivating factor in the' ... [actions]." *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir.1996). If the plaintiff satisfies that burden, the burden shifts to the defendants to show that they would have taken the action even in the absence of the plaintiff's protected conduct—that is, "even if they had not been improperly motivated." *Id.* at 80. At the summary judgment stage, if the undisputed facts demonstrate that the challenged action clearly would have been taken on a valid basis alone, defendants should prevail.

*Davidson v. Chestnut*, 193 F.3d 144, 148 (2d Cir.1999); *see also Connell v. Signoracci*, 153 F.3d 74, 79 (2d Cir.1998).

██ The close temporal relationship between the filing of the Notice of Claim and Plaintiff's arrest on the aggravated harassment charge could be circumstantial evidence of a retaliatory motive. *See*

*McCullough v. Wyandanch Union Free Sch. Dist.*, 187 F.3d 272, 280 (2d Cir.1999). However, the criminal proceedings were instituted on the complaint of Plaintiff's ex-girlfriend, Normile, and upon an Information prepared by Trooper VanAuken; not by any of the Defendants herein.[9] Plaintiff points to no evidence tending to suggest that either Normile or Van Auken conspired with Defendants to commence the criminal proceedings or that Defendants were aware of the criminal proceedings until a BCSO employee observed Plaintiff being arraigned on the aggravated harassment charge. Although Plaintiff claims that Defendants were aware of the criminal matter as early as July 1998 because, he contends, "police agencies who become involved with a criminal matter involving another agencies [sic] personnel notify the employing agency immediately," Pl.Mem. of Law, at 31, Plaintiff has produced no evidence tending to suggest that Trooper VanAuken was aware that Plaintiff was employed by the BCSO or that Trooper VanAuken actually informed the BCSO of the pending criminal action against Plaintiff. *See* McDonough Aff., Exs. 17, 18. Accordingly, there is no evidence tending to attribute any delay in the processing of the criminal charges against Plaintiff to Defendants. Thus, this may not form the basis of a retaliation claim and no fair minded jury could reasonably conclude otherwise.

██ The temporal proximity between the commencement of this litigation and the filing of the second disciplinary matter also may be circumstantial evidence of retaliation. *See McCullough*, 187 F.3d at 280. Of course, temporal proximity alone ordinarily is insufficient to withstand summary judgment. *See Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 280 (3d Cir. 2000); *Hafford v. Seidner*, 183 F.3d 506, 515 (6th Cir.1999); *Butler v. City of Prairie Village, Kansas*, 172 F.3d 736, 746

---

**9.** The New York State Police is a separate law enforcement agency than the BCSO or the

VPDPD.

(10th Cir.1999). Plaintiff supplies no affidavits, documents, or other admissible evidence tending to suggest that the second disciplinary charges were filed because he commenced the instant lawsuit. Thus, the Court finds that Plaintiff has failed to sustain his initial burden of demonstrating that his protected conduct was a substantial or motivating factor in the County Defendants' actions.

Assuming Plaintiff met his initial burden, the evidence before the Court reveals that the County Defendants would have commenced the disciplinary proceedings against Plaintiff regardless of the filing of this lawsuit and that they had a valid basis to do so. The evidence demonstrates that the County filed disciplinary proceedings against employees, including Plaintiff herein, who were charged with crimes. This is, of course, evidenced not only by the deposition of Nancy Olmstead, Personnel Officer for the County, but also the first disciplinary proceeding instituted against Plaintiff. Moreover, as previously discussed, *supra,* the County had reasonable grounds upon which to initiate the second disciplinary proceeding. While the County's delay in bringing the charges is somewhat suspect, it was allowed up to eighteen months to bring the charge, *see* N.Y.CIV. SERV.LAW § 75(4), and the delay does not negate a finding that the County Defendants disciplined Plaintiff for reasons unrelated to the filing of this action.

Plaintiff has not responded by pointing to any evidence tending to suggest that the Defendant's proffered reason for commencing or delaying the second disciplinary proceeding was false or that retaliation was otherwise a substantial or motivating factor. The temporal proximity offered by Plaintiff is insufficient to withstand summary judgment under the totality of the circumstances and particularly in light of the fact that, as Plaintiff alleges, Defendants were aware of potential impending litigation against them in December 1998 when they were served with a Notice of Claim, but Defendants did not commence the second disciplinary proceedings against him until five months later.

Accordingly, Plaintiff's retaliation claim also must be dismissed.

### H. Supplemental Jurisdiction

Having dismissed Plaintiff's federal claims, the Court declines to exercise supplemental jurisdiction over the remaining state law claims.[10]

### III. CONCLUSION

For the foregoing reasons, Plaintiff's Complaint is DISMISSED IN ITS ENTIRETY.

**IT IS SO ORDERED**

---

**10.** Although the Court decided Plaintiff's state law claims of false arrest and malicious prosecution, it did so only because the elements of those claims are identical to his § 1983 claims.